Alexander Del Giorno, J.
This is a claim to recover damages for alleged assault and battery committed upon the claimants by a State Trooper, and for their alleged false arrest and imprisonment.
Claimant Thomas W. Nisbett testified that on November 8, 1957, at about 10:15 p.m., he and his wife, the other claimant herein, stopped at a White Tower Restaurant located at Fourth Avenue and Dean Street, Brooklyn, after they left the home of a relative they had visited. At the time of their entry into the restaurant, four people were seated and there were no other seats available at the counter. Both of the claimants placed their order with the counterman. One of the men seated at the counter, who later in the trial was identified as Daniel McCullough, said to the counterman, £ £ Finish with what you are doing. Finish and wait on me, and forget about these nigger bums.” Claimant Susie A. Nisbett, wife of Thomas, then said to McCullough,££ Why don’t you mind your own business, mister, because we are not any bums, and if anyone is a bum, it’s you.” McCullough then jumped up from the counter, at which time Thomas ££ smelled a whole lot of whiskey on his breath ”. A friend of McCullough, who had been seated with him, said to him. *33 ‘ ‘ Do not pull that gun out in here. ” At this point, McCullough’s friends took him outside. Thomas heard a shot, and McCullough then re-entered the restaurant and started to beat Mrs. Nisbett. Her husband came to her rescue and McCullough pounded him upon the head, shoulder and neck with something heavy, which seemed to Thomas like the butt of a gun. Mr. Nisbett tried to hold McCullough’s arm to prevent his harming Mrs. Nisbett, and kept hearing the gun firing. Nisbett testified that he is extremely nearsighted, his vision being 20-200, and that he suffers from a detached retina sustained when he was hit by a baseball about 12 years ago. He became increasingly nervous and fearful that he would be killed. He was knocked to the floor, the gun going off, and he smelled gunsmoke. When he next heard the gun click, be became even more upset. As he heard his wife on the telephone asking for police assistance, he jumped from the floor and ran out of the restaurant. His coat had been torn off and his glasses lost. After walking on the street for a period of time, he called his home and then returned to the restaurant, where he found that his wife had gone to the 78th Precinct Police Station on Bergen Street. He proceeded on foot, to the station house, where he found his wife upstairs. Informed by a detective that he was under arrest, he remained in the station house from about 11:15 p.m. to 2:00 a.m., during which period he was emotionally upset and suffered from headaches and shoulder and head pains. He told the detective that he was in pain, but he received no medical aid. He did not ask for a doctor.
The District Attorney arrived at the station house at about 2:00 a.m. and took a statement from claimant. Claimant told him that he wanted McCullough arrested for assault, but no action was taken on this request. He was then locked in a cell until the next morning. Before leaving there for court, he found for the first time that McCullough was a State Trooper. With another policeman, McCullough took claimant to court. Having been fingerprinted by McCullough previously, claimant was charged with felonious assault and placed in $500 bail. Hearing was waived and in Special Sessions the charge was reduced to simple assault. On November 18, 1958 the claimant was discharged on his own recognizance upon McCullough’s failure to appear on numerous occasions.
Claimant testified that at no time did McCullough disclose to him that he was a police officer.
On cross-examination, claimant stated that he did not remember having the gun in his hand or firing it at any time.
*34 Mrs. Nisbett generally‘corroborated the testimony of her husband as to the occurrence. She testified that when the police arrived in response to her telephone call, they took her and McCullough to the station house, where she stated she wished to make a complaint against him. Then McCullough and a Police Sergeant went into a room from which only the latter emerged and sent her in to see some detectives, who questioned her. After half an hour, her husband came into the room, and at 2:00 a.m. the District Attorney came. She told him that McCullough had assaulted her; she informed him also that she suffered from a headache and sore shoulders and had not eaten since 5:00 p.m. She was instructed to wait in a room and later a detective informed her that she was under arrest. She refused to permit fingerprinting and was put into a cell with three other women, receiving no medical aid. Told that no bail would be set unless she consented to fingerprinting, the next morning she agreed to it and McCullough took her alone to court. The Magistrate paroled her and she went home and to bed. In Special Sessions, she was discharged on her own recognizance.
On cross-examination, she testified that McCullough hit her with the butt of the gun many times on her head and shoulders. At the time her husband seized McCullough’s hand, she ran to the telephone, seeing both of them fall to the ground and hearing four shots. At no time did Mr. Nisbett have the gun in his hand. While she was phoning, McCullough came over and struck her again. Later she testified that when her husband had the gun, McCullough’s friend grabbed her husband from the back in an attempt to help McCullough. On redirect, she testified that her husband never had the gun in his hand, but held the trooper’s hand in which the gun was held.
Dr. Vernal Gr. Cave, their family physician, treated both Mr. and Mrs. Nisbett. He testified that Mrs. Nisbett suffered a severe scalp contusion, resulting in headaches and dizziness which still persist. She also suffers from an anxiety reaction which has affected her sleep and will continue to do so indefinitely. Regularity of the menstrual cycle also was affected, which may continue for some time. He treated her about 40 times. X rays for fracture or dislocation were negative. As to Mr. Nisbett, the doctor testified that there was marked tenderness of the scalp, the head being swollen and lumps present, indicating hemorrhage under the skin. He also suffered from spasm of the muscle of the neck. The intra-cranial pressure caused vomiting and headaches, the latter of which may be permanent. He suffers also from spots before the eyes, the result of cerebral concussion, which is a permanent condition. He treated Mr. Nisbett 20 times.
*35 The legal fees incurred for representation on the criminal charges by both claimants amounted to the sum of $1,000, which they have paid.
On behalf of the State, Dr. Denker, a specialist in neurology and psychiatry, testified that he examined Mrs. Nisbett on August 5, 1960. He found that her memory was good, her reactions normal in all respects and that she had recovered completely. No claim was made to him of menstrual irregularity. He testified that Mr. Nisbett was completely normal, except that he said he still felt tenderness in the back of the right shoulder, and except that his left eye was almost blind.
Jerry Petillo testified that he was a counterman in the restaurant and was working alone at the time of the occurrence. McCullough was there in civilian clothes with a friend of his; and two other customers, one an elderly woman, were present. All these four were white. Then the Nisbetts came in and seemed to be in a hurry. McCullough said to them, “ Look, this boy is only doing the best he can,” and “ These two people were ahead of you two people, and take your place.” An argument ensued, during the course of which a Negro teenager entered the restaurant and commenced arguing with McCullough. Petillo asked the teenager to keep out of the argument, whereupon the new arrival said to him, “ I’ll cut you up.” The Negro then went toward McCullough, making a motion to take something out of his pocket, and McCullough took out his gun. They both started wrestling for the gun, which fell to the floor. Petillo ran out to the parking lot, and while he was in the back room of the restaurant on his way there, heard four shots. He had the watchman call the police.
On cross-examination, he identified four bullet holes in the panels and one on the outside of the door. He testified that there were about three seats between the Nisbetts and McCullough and his friend. Mrs. Nisbett asked him to hurry her order, but he had to fill the orders of the elderly woman and the other man first. McCullough did not appear to him to be drunk. When McCullough remonstrated with Mrs. Nisbett, she called him a foul name. He rose from his seat and an oral argument took place between Mrs. Nisbett and McCullough. The latter’s friend suggested they leave, and McCullough told him he resented what she had called him. At this point the colored teenager came in, and McCullough used the word “nigger” at which point the teenager went for what Petillo thought was a knife. McCullough then stated that he was a policeman, and when he pulled out his gun, the teenager tried to wrest it from him. The witness then ran toward the back, and did not know whether *36 McCullough struck Mrs. Nisbett, nor did he see any scuffle between them or between McCullough and Mr. Nisbett. The gun went off while McCullough and the teenager were scuffling. When he returned to the restaurant, all of the participants had gone. At about midnight, his relief appeared, at which time he went to his home, and, at about 2:00 a.m., to the police station in response to a phone call. On redirect, he testified that the teenager referred to, used the words, “I’ll cut your heart out ” to McCullough.
Detective Van Dyke testified that he was present at the station house during the interrogation of the claimants. In response to Van Dyke’s question to him, claimant Thomas Nisbett replied that the gun that was fired was McCullough’s, but it was in Nisbett’s hand and he fired it. During the interrogation, neither claimant asked for medical attention.
Patrolman G-ill testified that he was in the company of Mrs. Nisbett on the night in question for an hour and a half to two hours, during which time she did not ask for medical attention. He saw no evidence of physical injury to her. On cross-examination, he testified that he spoke to McCullough at about 11:20 p.m., and did not smell alcohol on his breath. About 150 feet from the restaurant, he and his partner saw McCullough running away from the restaurant. They stopped him, searched him and removed a gun from a holster on his belt. He was in civilian clothes. A later inspection of the revolver revealed no unexploded shells. At the time McCullough was stopped, Mrs. Nisbett approached, saying there had been a fight, that a gun had gone off and that her husband had been hurt and had run away. In Grill’s memoranda book, introduced on redirect, was a notation to the effect that shots had been fired and that at 11:15 p.m. he had assisted off-duty State Trooper Daniel McCullin (sic) in arrest of Thomas Nisbett and wife of 950 Marcy Avenue, for felonious assault. McCullough had told Grill that he had been chasing Mr. Nisbett. On recourse, he stated that at the time he was disarmed, McCullough did not ask for any medical attention.
William Posey, a longshoreman and a cousin of McCullough, testified that he, McCullough and McCullough’s father stopped at the restaurant after having left the home of McCullough’s sister in Brooklyn. There were a couple of people there when they entered. Later, a colored man and woman came in. The latter started .to yell at the counterman for not serving them first, because they Avere colored. McCullough told her to be quiet, that the counterman was doing his best. She then used “ a lot more vile language ”. Then another colored man came *37 in, spoke to the Nisbetts, and, using vile language toward the McCullough group, pulled a knife. A scuffle started, and Mrs. Nisbett attacked McCullough. The man with the knife went down after being struck by Posey and then fled out the door. The gun was lying on the floor and then Nisbett had his hand on it. McCullough and Nisbett were struggling on the floor, and, seeing Nisbett’s hand on the gun, the witness jumped on Nisbett’s back, held him by the neck and held the hand with the gun. The gun started to fire, McCullough grabbed the gun after several shots had been fired. The witness had hold of Nisbett’s coat but Nisbett slipped out of it and ran out of the door. McCullough never left the restaurant. On cross-examination, the witness testified that when he saw Nisbett’s hand on McCullough’s gun, he jumped on Nisbett’s back. McCullough was then on the floor, Mrs. Nisbett beating him with her handbag. When the argument first started, McCullough’s father had gone out to look for a policeman. The witness brought Nisbett to his feet, the gun still firing. McCullough jumped up from the floor and seized the gun. At that time the only people left in the restaurant were the witness, McCullough and the claimants. When they had visited McCullough’s sister, they had had only a couple of bottles of beer to drink and had nothing else before or after.
Daniel McCullough testified that on the date of the incident herein, he was a State Trooper, and that he had resigned in 1958, about two months after this incident. He went with his father and cousin to his sister’s home at 11:00 p.m., and proceeded from there to the restaurant, where other people were seated. The claimants came in and demanded to be served right away. The counterman was very busy, and McCullough told Mrs. Nisbett to wait her turn. She began to use abusive language to him and the counterman. Another man came in, talked to the claimants and then talked to the counterman, telling him he was going to cut him up. McCullough then identified himself as a police officer, told the new arrival there would be no cutting. This man then told him he would cut McCullough too, and when he started toward McCullough, the latter drew his revolver. Then Mrs. Nisbett struck McCullough on the side of his face with her pocketbook. Mr. Nisbett then jumped McCullough and Posey started to fight with the other man. In the scuffle, McCullough fell over backward, with Mr. Nisbett on top of him. The revolver went out of his hand and into Nisbett’s who started to pull the trigger. As he tried to retrieve his revolver, Nisbett ran out the door. The gun was empty then, and McCullough went out to try to catch Nisbett. After they all arrived at the *38 station, McCullough arrested the claimants on the advice of the District Attorney, McCullough having identified himself as a police officer to the other police officers.
On cross-examination, he testified that he did not know the name of the man who he said drew the knife, nor did he ever see him or the knife again. There had been five bullets in his revolver, the empty chamber acting as a safety. After Nisbett had gone, McCullough picked up the revolver from the floor. He testified that Nisbett fired the shots while both he and McCullough were on the floor. The man with the knife had run outside, with Posey after him, and McCullough went out looking-for Nisbett. He could not say that the hole in the outside doorway was a bullet mark, but did say that some of the marks in the wood inside the restaurant may have been bullet holes. Until he saw the District Attorney at the police station, he was the complainant, then became the arresting officer. The certified copy of his complaint against Mrs. Nisbett, alleging felonious assault in beating McCullough with her fists, does not mention that she struck him with her pocketbook. The certified copy of the complaint against Mr. Nisbett, also alleging felonious assault, states that Nisbett took a penknife and ran at him, later punching McCullough in the head and body. The witness did not remember making such an accusation, saying that if he did, it was because of lack of sleep on that night. On redirect, he reiterated that it was not Nisbett, but the other man, who had the knife. The gun came out of his hand when he fell over-backward and hit the tile floor. On recross, he stated that all he had had to drink that night was a half glass of beer.
The court thus is presented by the claimants and the State with two diametrically opposed versions of the occurrence in the significant phases of the matter. According to State’s witnesses Posey and McCullough, who are cousins, the Nisbetts were out of order in demanding immediate service, and McCullough told Mrs. Nisbett to wait her turn, whereupon she used abusive language to him and the counterman. At this point another colored man came in, talked to the Nisbetts, came toward the McCullough group and drew a knife, threatening to use it. McCullough then drew his revolver, having- informed the new arrival that he was a police officer. It is to be noted that the identity of this other Negro is unknown and he was never seen again by any of the participants. The knife he allegedly used was never found. Posey grappled with this man, and the Nisbetts attacked McCullough. Both' witnesses denied that McCullough left the restaurant during the altercation, and did *39 not admit that the hole in the outside doorway of the restaurant was a bullet hole.
State’s witness Petillo testified that he ran out of the room at the time McCullough and the unidentified Negro scuffled and heard four shots while he was in the back room. He identified as bullet holes the four holes on the inside of the restaurant and the one on the outside doorway. He later stated that his back was to the counter most of the time as he was getting his orders together.
If the testimony as to the existence and the actions of the unidentified Negro is to be credited, then there might be a plausible explanation for the drawing of a revolver by McCullough.
On all of the evidence presented, after having observed the State’s witnesses and their demeanor and considering their possible motivations, and employing a modicum of common sense, the court refuses to accept as credible the testimony of State’s witnesses Posey and McCullough. The existence of the third Negro, who was never found, identified or accounted for, the court must regard as fiction. The testimony of Petillo cannot be given entire credence because the court is of the opinion that he was not fully aware of all of the events which transpired or as to the sequence in which they occurred, nor did his testimony coincide in all important details with that of Posey and McCullough.
The testimony of the claimants, on the other hand, as to the occurrence, is accepted by the court as a substantially correct recital. The court finds that McCullough took the initiative in insulting claimants; that McCullough left and came back into the restaurant and beat both Nisbetts; that Thomas Nisbett tried to hold McCullough’s arm to prevent the latter’s injuring Mrs. Nisbett; that the gun went off several times; that Thomas Nisbett left the restaurant in a state of shock and that the Nisbetts did not know during all of this time that McCullough was a State Trooper.
The question which now must be determined by the court is whether at the time of the incident State Trooper McCullough was acting within the scope of his employment or in furtherance of his duty as an employee of the State of New York and whether under all the circumstances his act was one he was justified in performing on behalf of the State.
It is not material whether McCullough identified himself as a policeman. Whether he did or did not so identify himself has not bearing on his status as acting within the scope of his duty. *40 At the time he was off duty; he had been visiting his sister in Brooklyn; he was not within his precinct and he was relaxing socially in the restaurant before the arrival of claimants. lie was not acting as a police officer. Whatever trouble ensued between him and the Nisbetts arose as a dispute among private citizens. There was no act committed by the Nisbetts which gave justification to McCullough to adopt the course of action he followed and his acts cannot be conceived to have been performed in the line of duty.
The rule of liability of a master for the acts of his servants was set forth in Osipoff v. City of New York (286 N. Y. 422, 431-432) citing Muller v. Hillenbrand (227 N. Y. 448) as follows: “ The rule as stated in the Mott case was reaffirmed by this court in Muller v. Hillenbrand (supra, p. 451), where it was said: ‘ The rule of liability of a master for the acts of his servant is tersely stated in Mott v. Consumers’ Ice Co. (73 N. Y. 543, 547). It is that ‘ ‘ For the acts of the servant within the general scope of his employment, while engaged in his master’s business, and done with a view to the furtherance of that business and the master’s interest, the master will be responsible, whether the act be done negligently, wantonly, or even wilfully. * * * But if a servant goes outside of his employment, and without regard to his service, acting maliciously, or in order to effect some purpose of his own, wantonly commits a trespass, or causes damage to another, the master is not responsible.” ’ ”
In the case of Bell v. City of New York (137 N. Y. S. 2d 104, affd. 285 App. Div. 1140, 1143, without opinion) the complaint charged assault and negligence on the part of the police officer employed by the city. Decedent, for whose death damages were sought, was killed by a bullet from the officer’s gun which was discharged in a barroom. On the trial the assault charge was withdrawn and the trial proceeded on negligence. Although the officer was off duty, plaintiff claimed that he was acting as the agent of the city and .that the negligence consisted of his drawing his revolver in a crowded barroom. The officer denied he drew his gun, asserting it became dislodged from its holster as he struggled to defend himself from another patron of the bar who had pushed and struck him. His testimony at the trial as to the gun was inconsistent with his testimony in the Magistrates’ Court, where he had admitted reaching for his gun. The court found he did reach for his gun and that it went off while he and his adversary were struggling for its control. The court refused to hold the city liable, on the ground that the officer could “ hardly be said to have been acting in the interests of the City or in the course of his employment ”,
*41 It is the opinion of the court that subsequent to the shooting incident, claimants might have been treated better than they were in the police station. In any event, while it appears that McCullough intended to act only as a complainant, he became an arresting officer only at the suggestion of the District Attorney. The fact that an arrest was made, however, does not alter the fact that McCullough had not been acting in the course of his employment by the State. (Bell v. City of New York, supra.)
The court determines therefore that State Trooper McCullough was not acting within the scope of his employment or in furtherance of his duty as a State employee, and further that under all the conditions his act was not one he was justified in performing on behalf of the State. The State is not liable for his actions herein.
All motions heretofore made on behalf of the claimants on which decision was reserved are hereby denied. The claim is dismissed.