## LEPORE *v.* GULF OIL CORPORATION AND WALTERS

[No. 157, September Term, 1964.]

592

*Decided March 3, 1965.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, HORNEY and SYBERT, JJ., and ROBERT E. CLAPP, JR., J., Associate Judge of the Sixth Judicial Circuit, specially assigned.

*Alan Edgar Harris* for appellant.

*Joseph G. Finnerty, Jr.,* with whom was *E. Clinton Bamberger, Jr.,* on the brief, for Gulf Oil Corporation, one of the appellees. No brief—No appearance for other appellee.

CLAPP, JR., J., by special assignment, delivered the opinion of the Court.

This appeal had its inception in a suit for wanton, malicious assault and battery brought by the appellant, the plaintiff below, against the appellee, Gulf Oil Corporation, and Lester K. Walters, Jr., its servant and employee, alleged to have been acting in the course of his employment. At the conclusion of all of the

testimony, the trial court directed a verdict in favor of the appellee, Gulf Oil Corporation, because there was no evidence in the case legally sufficient to form the basis for a jury finding that the assault was within the scope of the employment or authority of the codefendant, Walters, or reasonably foreseeable by his employer, the appellee.

The case was submitted to the jury against Walters only and resulted in a verdict and judgment against him in the amount of $1,150.00. Judgment was entered for the appellee for costs and this appeal was duly noted from the latter judgment.

The only question here presented is whether the trial court properly directed the verdict in favor of the appellee. We must, therefore, determine whether the evidence and the reasonable and proper inferences to be drawn therefrom were sufficient to require the submission to the jury of the issue whether the appellee was responsible for the assault by Walters. This requires us to consider the evidence in a light most favorable to the appellant. *Grue et al. v. Collins,* 237 Md. 150. See also *Lewis v. Accelerated Express,* 219 Md. 252.

Considered in this light, the evidence against the appellee may be summarized as follows:

Lester K. Walters, Jr. was employed by Gulf Oil Corporation as a salaried retail sales representative under the direct supervision of an area sales manager and his assistants. He was responsible for most of the activities of Gulf in his assigned territory, this including promoting service station outlets, securing operators, and helping to train and counsel them in merchandising the products of the appellee. He had no authority to accept or reject an applicant nor to vary any terms agreed upon between the appellee and its operators.

One of the methods of business operation between the appellee and its service station operators was a so-called "bailment plan" whereby the appellee would fill the tanks of the operator under such a plan with gasoline, ownership thereof being retained in the appellee until it was sold by the operator. It was one of the duties of Walters to call periodically upon operators working under such a bailment plan to collect the monies due appellee from sales of gasoline made since the previous col-

lection period. If the service station operator did not have his settlement account ready and the money available when Walters called for it, he, Walters, had to call his superiors for further instructions.

The appellant had been procured as an operator for the appellee in April of 1961, largely upon the recommendation of Walters. He had little capital and had to sign a note to the appellee for a part of the gasoline and oil used to stock his station. Several months later, because of the appellant's continued financial difficulty, Walters suggested to him that he might switch to the bailment plan which would relieve him of the necessity of paying for gasoline while it was in his tanks and would only require him to pay for the gasoline as it was sold. The appellant agreed to this and believed that, in some way, although he was still indebted on his note, he would receive back from the appellee some of the funds previously paid for gasoline then in his tanks and bought while operating under the former plan. Walters assured him that he would cooperate with him to obtain a return of these funds if possible. Apparently the change in the method of operation was not of too great assistance to the appellant because he was frequently slow in making his payments to Gulf even under the bailment system.

On November 20, 1961, Walters called upon the appellant to collect not only the payment due appellee that day but also a previous payment that had been missed. An argument ensued about the fact that the appellee had not returned to the appellant the funds that he had expected. The testimony of the appellant and Walters as to what exactly occurred differs greatly but, for the purpose of this decision, we must accept the version most favorable to the appellant which, in his language, is as follows:

"So on November 20, 1961, during our conversation we had we both got hot, he started using foul language. We were talking about Mr. Magnella [Walters' superior]. He said Mr. Magnella was helping me all he can about the business of the bailment. He said I ought to be grateful. So I said, 'All you are is a messenger boy between the Company and myself', and he

just came over the top of the desk and hit me and I
was knocked to the floor. I was tight up in the chair
and hit the back of the rack. He picked me up off the
floor, and he said that he was going to take me out-
side and beat the s-h-i-t out of me. I said, 'This is as-
sault and battery'. He turned and ran out, so I noti-
fied my fiancee, which is now my wife."

It is admitted by both parties to this appeal that Walters
was the employee of the appellee and we are not, therefore,
faced with the question presented in *Globe Indemnity Co. v.
Victill Corporation,* 208 Md. 573, dealing with the responsibility
of a principal for the actions of an agent who is not a servant.

The established principle in Maryland for determining the
liability of an employer to third persons for the actions of his
servant is stated in *Hopkins Chemical Co. v. Read Drug and
Chemical Co.,* 124 Md. 210 at page 214 as follows:

" 'The simple test is whether they were acts within
the scope of his employment; not whether they were
done while prosecuting the master's business, but
whether they were done by the servant in fur-
therance thereof, and were such as may fairly be
said to have been authorized by him. By 'authorized'
is not meant authority expressly conferred, but whether
the act was such as was incident to the performance
of the duties entrusted to him by the master, even
though in opposition to his express and positive or-
ders.' " (Quoting from Wood on Master and Servant,
sec. 279).

This language was quoted and approved in *Lewis v. Accel-
erated Express, supra,* and the test, as above set forth, must be
applied to the facts of each case.

The problem here presented is whether an employer can be
held liable for a wanton assault upon a third person by an em-
ployee who has gone to the third person's place of business to
collect a debt due the employer, lost his temper in a quarrel
arising out of the attempted collection, and struck the third per-
son.

Cases on this question are collected in 22 A.L.R. 2d 1227, and the annotator summarizes their holdings at page 1229 as follows:

*"Summary.*

Although an employer is clearly not liable for an assault committed by an agent or servant engaged in collecting the employer's debts where the connection between the assault and the duty of collection is entirely coincidental, or where the assault is motivated solely by the employee's personal interests, there appears a distinct split of authority, at least as to results, in the closer cases where the assault arises, at least indirectly, from the collector's efforts to carry out his duties.

While the actual reasoning of the courts is somewhat obscured by the use of generalities as to scope of employment and implication of authority, there appears to be some justification for collecting the decisions under two general rules, (1) that the employer may be held liable for the assault complained of where it is done during the 'course' of the employment or is caused, even though indirectly, by the attempts to enforce payment, and (2) that the master is not chargeable with liability for the collector's assault unless the violence used was more than a merely incidental result of the attempted collection, but was intended by the servant to carry out the employer's purposes, and, further, that the employment in question must have been of a nature which reasonably contemplated the use of force as a not unlikely means of carrying out its duties. And, under the second rule, employment for the purpose of collecting debts has uniformly been held not to be an employment contemplating the use of force."

*Harper and James, The Law of Torts,* Vol. 2, § 26.9, page 1392, deals with the question as follows:

"Perhaps the most troublesome case is that where the master's affairs are not being furthered but the

servant hurts plaintiff in a quarrel that does arise out of the employment. A truck driver and plaintiff collide, for example, and in the altercation so likely to follow such an incident the driver loses his temper and strikes plaintiff. Or a restaurant counterman is angered by insults over the matter of a sandwich and hits a customer. The majority of courts do not allow recovery in these cases except where it can be rested on some narrower ground such as the nondelegable duty, or negligence in employing a man known to be hot-tempered. Some decisions point to a broader liability, however, and recent opinions of the California Supreme Court have set forth compelling arguments for it along the line of workmen's compensation cases holding that similar injuries (to workmen) arise *out of and in the course of* their employment."

*The Restatement of Agency 2d,* § 245, dealing with the use of force by a servant, states the rule to be:

"A master is subject to liability for the intended tortious harm by a servant to the person or things of another by an act done in connection with the servant's employment, although the act was unauthorized, if the act was not unexpectable in view of the duties of the servant."

Comment c, thereunder, page 539, says:

*"Nature of employment.* Whether or not an employment involves or is likely to lead to the use of force against the person of another is a question to be decided upon the facts of the individual case. To create liability for a battery by a servant upon a third person, the employment must be one which is likely to bring the servant into conflict with others. *The making of contracts, or the compromise, settlement, or collection of accounts, does not ordinarily have this tendency.* On the other hand, the employment of servants to guard or to recapture property, to take possession of land, or to deal with chattels which are in the

possession of another, is likely to lead to altercations, and the master may become liable, in spite of instructions that no force shall be exerted against the person of the possessor." (Emphasis added).

The decisions of this Court dealing with the use of force by a servant are in accord with the above authorities. For instance, in *Railway Co. v. Peacock, 69 Md. 257,* an assault and battery case, a streetcar conductor had quarreled with a passenger about taking his seat in the car. Subsequently, the passenger left the streetcar where the quarrel had occurred to go to the office of the company and make a complaint. Shortly thereafter, the conductor left the streetcar and assaulted and beat the passenger on the public street. It was held that the conductor was not acting within the sphere of his duty or scope of his authority because, "[h]e left and stepped aside from both in order to gratify his spleen." In affirming the grant of a directed verdict for the company, this Court at page 262, stated:

"Judge Cooley, in his work on Torts, 535, says: 'the liability of the master for intentional acts which constitute legal wrongs can only arise when that which is done is within the real or apparent scope of the master's business. It does not arise when the servant has stepped aside from his employment to commit a tort which the master neither directed in fact, nor could be supposed, *from the nature of his employment, to have authorized or expected the servant to do.'*" (Emphasis added).

The above case, of course, is not one involving the attempted collection of a debt but is cited merely to show the early adoption by this Court of the present general rule relating to the use of force by an employee.

An example of the application of this rule to an employee attempting to make a collection is found in *Steinman v. Laundry Co.,* 109 Md. 62. In this case a laundry truck driver had delivered blankets to a customer on which the cleaning charges of his employer were unpaid. Under the rules of the employer, the driver was required to collect such cleaning charges upon

delivery and if he made delivery without collection, he was personally liable for them to his employer. The evidence was undisputed that the driver went to the home of the plaintiff on his own initiative to repossess blankets previously delivered by him without collecting the charges for them. An assault of the plaintiff took place and suit against the employer followed. It was held as a matter of law, that the employer was not responsible to the plaintiff, this Court saying that there could be no liability on the employer's part since its servants were instructed not to leave goods without receiving payment and that, when credit was extended by one of the servants, he was responsible for the money involved and was therefore acting on his own behalf in attempting to make the collection.

On the other hand, in *Patapsco Loan Co. v. Hobbs,* 129 Md. 9, there was evidence that the defendant's employee, who was the secretary, treasurer, and general manager of the company, and its agent for the purpose of collecting loans, called at the plaintiff's house for the purpose of collecting payment of an overdue loan. He forced his way into the plaintiff's sickroom and when the full amount of the debt was not forthcoming, got excited, approached her bed, shook his finger in her face, and threatened to "clear you out" unless the debt was paid. It was held that this evidence was sufficient to sustain a jury verdict for the plaintiff because from it, the jury might find that the employee became a trespasser *ab initio* (the action was in trespass with injuries from the assault laid as consequential damages) and that the injuries complained of resulted from this trespass which was committed in furtherance of the employer's business. It is obvious that the case is distinguishable from the present case because there was evidence that, throughout, the employee was attempting to collect a debt due his employer and never departed from this purpose.

An implicit, though not explicit, rationalization of these two cases is found in *Carroll v. Hillendale Golf Club,* 156 Md. 542, involving an action brought by a young boy who was shot by a greenskeeper whose duties involved merely watering, trimming and otherwise maintaining the premises of the club. The plaintiff was trespassing upon the club grounds at the time and the evidence disclosed that the gun was owned by the greens-

keeper and carried by him because he had recently experienced thefts from his adjoining farm. A prayer for a directed verdict in favor of the club was granted and in affirming judgment thereon, this Court said at page 546:

> "The cases in which the employer has been liable have generally been those of police officers, watchmen, and railroad trainmen. In such cases the torts of the servant are usually so related to his employment or occupation as to leave to the jury the determination of the fact of the relation of the servant's torts to the scope of his employment and to the furtherance of the master's business. In the instant case, in our opinion the record fails to show anything except the exhibition of the personal malice, wantonness, and bad temper of the servant, and that, inexcusable as it was, it bore no relation to the scope of his employment or to the appellee's business, and the appellee's prayer was, therefore, properly granted."

We have examined the California cases relied upon by the appellant and mentioned in *Harper and James, supra,* and find that by statute there, a principal is liable for "wrongful acts" of his agent committed "in and as a part of the" principal's business. Under this provision it is sufficient, in California, if the injury results from a dispute arising out of the servant's employment. *Carr v. Wm. C. Crowell Co.,* 28 Cal. 2d 652, 171 P. 2d 5, *Fields v. Sanders,* 29 Cal. 2d 834, 180 P. 2d 684. There is, of course, no such statute in force in this State.

In the present case the only authority of Walters was to attempt to make a collection and to call his employer if he failed to do so. We hold that this, without more, is insufficient to make the subsequent assault an expectable act done in furtherance of his employment and he was, therefore, acting without the scope of his employment. There is no evidence or contention that the appellee knew of any propensity to violence on the part of Walters, or that it ratified his wrongful act. The direction of a verdict in favor of the appellee was, therefore, proper.

*Judgment affirmed, with costs.*