587 A.2d 467

**Robert Andrew SAWYER et al.**

v.

**Edwin N. HUMPHRIES.**

No. 44, Sept. Term, 1990.

Court of Appeals of Maryland.

March 22, 1991.

248

**250**

Stephen P. Bourexis and Judith S. Stainbrook, Westminster, for petitioners.

Millicent Edwards Gordon, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Pikesville, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ.

ELDRIDGE, Judge.

This case concerns a police officer's immunity from suit under the Maryland Tort Claims Act, Maryland Code (1984, 1989 Cum.Supp.), §§ 12–101 through 12–110 of the State Government Article.

As the circuit court dismissed the plaintiffs' complaint, for purposes of these appellate proceedings the facts are those alleged by the plaintiffs. On June 10, 1988, Robert Andrew Sawyer, one of the plaintiffs, was driving on Route 31 in Carroll County. Dean Hundley, the other plaintiff, was a passenger. Mr. Sawyer and Mr. Hundley were traveling behind another car driven by the defendant Mr. Humphries. Unknown to the plaintiffs, Mr. Humphries, who was wearing civilian clothing and driving his personal car, was an off duty State police officer.[1] While driving behind Mr. Humphries, Mr. Sawyer and Mr. Hundley noticed him making some hand signals towards them. He then pulled to the shoulder of the road, allowing them to pass. The plaintiffs allege that they then turned down a side road to investigate a construction site where they hoped to obtain work and that, upon returning to Route 31, the car that had allowed them to pass was parked on the side of the road. Mr. Humphries was leaning up against his car motioning to Mr. Sawyer and Mr. Hundley to approach him.

---

**1.** The defendant, in the memorandum in support of his motion to dismiss, acknowledged that at the time he was "off duty, not in uniform, and travelling in his personally-owned vehicle."

According to the plaintiffs, as they slowly drove toward Mr. Humphries's car to see what he wanted, Humphries picked up some rocks and threw one at their car. Although they tried to avoid the rock by swerving back onto the road, it hit the passenger side of their car, leaving a large dent.

At this point Mr. Sawyer made a U-turn, parked his car on the side of the road opposite Mr. Humphries and got out, allegedly with the intention of talking about the damage to his car. Mr. Sawyer claims that Mr. Humphries picked up more rocks and that, in response, Mr. Sawyer grabbed an empty beer bottle from the side of the road to defend himself. Mr. Humphries then allegedly attacked Mr. Sawyer, grabbing him by the hair, beating him about the face and threatening to kill him. When Mr. Hundley stepped out of the car to assist Mr. Sawyer, Mr. Humphries released Mr. Sawyer and stepped toward Mr. Hundley, saying, "unless you want some too, boy, you better get back in the car." Mr. Hundley got back in the car. Mr. Sawyer was then apparently able to get away from Mr. Humphries and got into the passenger seat of his car as he was too badly injured to drive. At this point, Mr. Humphries approached the plaintiffs' vehicle and offered to exchange information. Mr. Sawyer refused, and he and Mr. Hundley drove away toward the town of New Windsor.

The plaintiffs further allege that, at one point, they saw Mr. Humphries driving his automobile in front of them while they were driving toward New Windsor, but that Mr. Humphries turned down a side street and then began following them. As the plaintiffs were waiting at a stop sign in New Windsor, Mr. Humphries got out of his car and again approached Mr. Sawyer as he was seated on the passenger side of the plaintiffs' car. Mr. Humphries allegedly slapped Mr. Sawyer across the chest, stated that he was a Maryland State Police Officer, and that he was arresting Mr. Sawyer. Mr. Humphries tried to physically remove Mr. Sawyer from the car but was unable to do so because Mr. Sawyer's seat belt was fastened. Mr. Sawyer and Mr. Hundley claim that they did not believe Mr. Humphries was a police officer and asked him repeatedly for identification. Mr. Humphries, however, refused to provide either plaintiff with any identification. Other police officers

eventually arrived and arrested Mr. Sawyer. The record does not disclose whether Mr. Sawyer was ever charged with an offense.

On June 9, 1989, Mr. Sawyer and Mr. Hundley filed in the Circuit Court for Carroll County the complaint against Mr. Humphries which commenced this action. Counts one and two charged assault based on the defendant's throwing a rock at the plaintiffs' car. Count three charged a battery based on the defendant's physical attack upon Mr. Sawyer on Route 31. Counts four and five claimed that the threats and threatening conduct made toward Mr. Sawyer and Mr. Hundley constituted assault. Counts six and seven asserted battery in light of Mr. Humphries's alleged physical abuse of Mr. Sawyer in New Windsor. The plaintiffs did not name the State of Maryland as a defendant, and they did not notify the State Treasurer of the action.

Mr. Humphries did not file an answer to the complaint. Instead Mr. Humphries filed a motion to dismiss, arguing that, because he was employed as a Maryland State police officer and was acting within the scope of his employment with the State at the time of the alleged tortious conduct, and because he acted without malice, the Maryland Tort Claims Act applied and granted him immunity.[2] Therefore, Mr. Humphries contended, the action against him personally should be dismissed. The motion to dismiss also asserted that, because the plaintiffs failed to satisfy the prerequisites of the Tort Claims Act for bringing a tort suit under that Act, specifically the notice provision, the present tort

---

2. Section 12–105 of the Act, Maryland Code (1984, 1989 Supp.), § 12–105 of the State Government Article, sets forth the circumstances under which State personnel will be immune from suit. At the time of the incident in this case, § 12–105 read as follows:

"§ 12–105. Immunity of State personnel.

(a) *In general.*—State personnel are immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence, and for which the State or its units have waived immunity under this subtitle, even if damages exceed the limits of that waiver."

Section 12–105 was amended by Chapter 546 of the Acts of 1990. No substantive change was made in the above-quoted provision, but it was in effect moved to Code (1974, 1989 Repl.Vol., 1990 Supp.), § 5–399.2(b) of the Courts and Judicial Proceedings Article.

action could not be maintained with the State or a state agency substituted as a party.[3]

The circuit court, without explanation, granted the motion to dismiss.

Mr. Sawyer and Mr. Hundley appealed to the Court of Special Appeals which affirmed. *Sawyer v. Humphries*, 82 Md.App. 72, 570 A.2d 341 (1990). The Court of Special Appeals held that because "an employee of the Maryland State Police, who is sworn as a police officer, is for police purposes on duty twenty-four hours a day, seven days a week, fifty-two weeks a year" and that because Mr. Humphries "acted as a law enforcement officer, at the time of the incident," his conduct fell within "the scope of [his] public duties" within the meaning of the Maryland Tort Claims Act. 82 Md.App. at 83–84, 570 A.2d at 347. In addition, the intermediate appellate court held that, as a matter of law, the plaintiffs' complaint did not sufficiently allege that Mr. Humphries acted with malice. Consequently, according to the Court of Special Appeals, Mr. Humphries was entitled to the immunity granted by the Tort Claims Act. The plaintiffs filed a petition for a writ of certiorari which we granted.

It is clear from the language of § 12–105 of the Maryland Tort Claims Act that, in order for a State employee to be granted immunity from suit by that statute, he must act "within the scope of [his] public duties" and "without malice or gross negligence." Therefore the overall issue in the case before us is whether the plaintiffs' complaint alleged facts sufficient to show conduct by Mr. Humphries which either was outside the scope of his "public duties" or was malicious.[4]

---

**3.** "§ 12–106. Restrictions on actions.

      \*     \*     \*     \*     \*     \*

    (b) *Claim and denial required.*—A claimant may not institute an action under this subtitle unless:

    (1) the claimant submits a written claim to the Treasurer or a designee of the Treasurer within 180 days after the injury to person or property that is the basis of the claim; ...."

**4.** We note that because this case is before us on the defendant's motion to dismiss the plaintiffs' complaint, the allegations of the

(1)

■ Although this Court has never discussed in detail whether the phrase "scope of the public duties" in the Tort Claims Act is coextensive with the common law concept of "scope of employment" under the doctrine of respondeat superior, we have treated them as the same. *See Rucker v. Harford County*, 316 Md. 275, 302, 558 A.2d 399, 412 (1989) (Tort Claims Act applicable to "tortious acts of a sheriff or deputy sheriff committed in the scope of employment"); *State v. Jett*, 316 Md. 248, 252, 558 A.2d 385, 386 (1989) (test under the Tort Claims Act is *"respondeat superior* liability . . . under agency law"); *Clea v. City of Baltimore*, 312 Md. 662, 671 n. 6, 541 A.2d 1303, 1307 n. 6 (1988) ("under a provision in the Tort Claims Act, . . . state personnel, acting within the scope of their employment, and without malice or gross negligence, are granted immunity for acts with respect to which the State or its units have waived immunity in the Act"). *See also Wolf v. Liberis*, 153 Ill.App.3d 488, 106 Ill.Dec. 411, 505 N.E.2d 1202, *appeal denied*, 115 Ill.2d 552, 110 Ill.Dec. 466, 511 N.E.2d 438 (1987); *Maryland Cas. Co. v. Huger*, 728 S.W.2d 574, 579 (Mo.App.1987).

This interpretation of the language "scope of public· duties" as synonymous with "scope of employment" for purposes of respondeat superior liability is in accord with the purpose of the Tort Claims Act. The legislative history of the Act shows that the General Assembly intended to render the State liable, in those areas where it has waived its immunity for tort claims, in the same manner and to the same extent as a private party. *See* the Department of Legislative Reference's file on Senate Bill 585 of the 1985 Session of the General Assembly.[5]

---

complaint must be accepted as true. *Cox v. Prince George's County*, 296 Md. 162, 169, 460 A.2d 1038, 1042 (1983); *Walker v. D'Alesandro*, 212 Md. 163, 167, 129 A.2d 148, 150 (1957).

5. The statute does appear to make two specific types of acts within the "scope of public duties" as a matter of law, and thus, as to them, common law "scope of employment" principles are not necessarily controlling. *See* § 12–105(b) of the State Government Article (1984, 1989 Supp.). This provision is not, however, relevant in the case at bar.

■ The general test set forth in numerous Maryland cases for determining if an employee's tortious acts were within the scope of his employment is whether they were in furtherance of the employer's business and were "authorized" by the employer. In an often-quoted passage, the Court in *Hopkins C. Co. v. Read Drug & C. Co.*, 124 Md. 210, 214, 92 A. 478, 479–480 (1914), explained:

> " 'The simple test is whether they were acts within the scope of his employment; not whether they were done while prosecuting the master's business, but whether they were done by the servant in furtherance thereof, and were such as may fairly be said to have been authorized by him. By "authorized" is not meant authority expressly conferred, but whether the act was such as was incident to the performance of the duties entrusted to him by the master, even though in opposition to his express and positive orders.' " (quoting from *Wood on Master and Servant* § 279 (1877)).

*Accord, e.g., Wood v. Abell*, 268 Md. 214, 227, 300 A.2d 665, 671–672 (1973); *Drug Fair v. Smith*, 263 Md. 341, 350, 283 A.2d 392, 397 (1971); *LePore v. Gulf Oil Corp.*, 237 Md. 591, 595, 207 A.2d 451, 453 (1965); *Lewis v. Accelerated Express*, 219 Md. 252, 255, 148 A.2d 783, 785 (1959); *E. Coast Lines v. M. & C.C. of Balto.*, 190 Md. 256, 285, 58 A.2d 290, 303–304 (1948).

■ In applying this test, there are few, if any, absolutes. Nevertheless, various considerations may be pertinent. The Court, in *E. Coast Lines v. M. & C.C. of Balto., supra*, 190 Md. at 285, 58 A.2d at 304, summarized four of them:

> "To be within the scope of the employment the conduct must be of the kind the servant is employed to perform and must occur during a period not unreasonably disconnected from the authorized period of employment in a locality not unreasonably distant from the authorized area, and actuated at least in part by a purpose to serve the master. *Mechem on Agency*, Section 36; *Huffcut on Agency*, Section 5; *American Law Institute, Restatement, Agency*, Section 228, comment (b)."

In *A. & P. Co. v. Noppenberger*, 171 Md. 378, 390–391, 189 A. 434, 440 (1937), after setting forth the factors quoted

above, the Court went on to quote with approval the *Restatement of Agency* § 229 (1933), as follows:

"On the other hand, certain conduct of the servant may be within the scope of his employment, although not intended or consciously authorized by the master, but '(1) To be within the scope of the employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized. (2) In determining whether or not the conduct, although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, the following matters of fact are to be considered:—(a) whether or not the act is one commonly done by such servants; (b) the time, place and purpose of the act; (c) the previous relations between the master and the servant; (d) the extent to which the business of the master is apportioned between different servants; (e) whether the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant; (f) whether or not the master has reason to expect that such an act will be done; (g) the similarity in quality of the act done to the act authorized; (h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant; (i) the extent of departure from the normal method of accomplishing an authorized result, and (j) whether or not the act is seriously criminal.' *Id.*, 229."

*See Rusnack v. Giant Food, Inc.*, 26 Md.App. 250, 261–265, 337 A.2d 445, 451–454 (1975); *Prosser and Keeton On The Law Of Torts* § 70 (5th ed. 1984); *Restatement (Second) Agency* §§ 228, 229 (1958).

■ In addition, an important factor is whether the employee's conduct was "expectable" or "foreseeable." *Cox v. Prince George's County*, 296 Md. 162, 171, 460 A.2d 1038, 1042 (1983); *LePore v. Gulf Oil Corp., supra*, 237 Md. at 597, 600, 207 A.2d at 454, 456; *Central Railway Co. v. Peacock*, 69 Md. 257, 262, 14 A. 709, 710–711 (1888).

■ Furthermore, and particularly in cases involving intentional torts committed by an employee, this Court has emphasized that where an employee's actions are personal,

or where they represent a departure from the purpose of furthering the employer's business, or where the employee is acting to protect his own interests, even if during normal duty hours and at an authorized locality, the employee's actions are outside the scope of his employment. *LePore v. Gulf Oil Corp., supra*, 237 Md. at 596–598, 207 A.2d at 453–454; *Carroll v. Hillendale Golf Club*, 156 Md. 542, 545–546, 144 A. 693, 695 (1929); *Steinman v. Laundry Co.*, 109 Md. 62, 67, 71 A. 517, 519, 21 L.R.A., N.S. 884 (1908); *Central Railway Co. v. Peacock, supra*, 69 Md. at 265, 14 A. at 712.

█ Finally, "[w]here the conduct of the servant is unprovoked, highly unusual, and quite outrageous," courts tend to hold "that this in itself is sufficient to indicate that the motive was a purely personal one" and the conduct outside the scope of employment. *Prosser and Keeton On The Law Of Torts, supra*, at 506. *See Henley v. Prince George's County*, 305 Md. 320, 330 n. 2, 503 A.2d 1333, 1338 n. 2 (1986); *Carroll v. Hillendale Golf Club, supra*, 156 Md. 542, 144 A. 693.

█ In light of these principles, it seems obvious that the defendant's alleged conduct, at least prior to the incident in the town of New Windsor, was outside of the scope of his employment. The defendant was off duty and driving his personal car. Under the allegations of the complaint, the defendant's throwing a rock at the plaintiffs' car and his attack upon the plaintiffs along Route 31 had nothing to do with the defendant's duties as a police officer. As to that activity, there is no suggestion in the complaint that Mr. Humphries was attempting to question, stop, detain or arrest the plaintiffs in connection with any traffic or criminal offense or any other matter of concern to the police department.[6] On the contrary, insofar as it appears from

---

**6.** Even under the version of the facts set forth by the defendant Humphries in the memorandum supporting his motion to dismiss, when Humphries threw the rock at the plaintiffs' car and struggled with the plaintiff Sawyer along Route 31, Humphries was not attempting to detain or arrest either plaintiff but was acting in self defense. It was not until the plaintiffs drove off and Humphries got in his car and began to pursue the plaintiffs that he claims that he intended to

the complaint, Mr. Humphries was acting for purely personal reasons and not incidental to any State law enforcement purpose.

■ In holding that Mr. Humphries was acting in the scope of his employment as a policeman, the Court of Special Appeals relied on the notion that a police officer is "on duty" all of the time. It is true that the scope of employment for police officers, as well as those engaged in somewhat similar occupations, is often viewed broadly because of the nature of the employment. *See Carroll v. Hillendale Golf Club, supra,* 156 Md. at 546, 144 A. at 695 (distinguishing assaults by "police officers, watchmen, and railroad trainmen" from those by other employees because the actions of one of the former "are usually so related to his employment or occupation as to leave to the jury the determination of the fact of the relation of the servant's torts to the scope of his employment"). *See also Gambling v. Cornish,* 426 F.Supp. 1153, 1155 (N.D.Ill.1977). Nevertheless, the same basic principles and considerations, applicable to employees generally, are used to determine whether "police officers, watchmen, and railroad trainmen" are acting within the scope of their employment. *See Cox v. Prince George's County, supra,* 296 Md. at 170–171, 460 A.2d at 1042; *Drug Fair v. Smith, supra,* 263 Md. at 344, 346–350, 283 A.2d at 395–397; *Central Railway v. Peacock, supra,* 69 Md. at 262–265, 14 A. at 710–712.

We agree with the Court of Special Appeals that a police officer may be "on duty" 24 hours a day in the sense that he may be on call and may under certain circumstances have an obligation to act in a law enforcement capacity even when on his own time.[7] That does not, however, lead to the

---

arrest them for an offense. *See Rusnack v. Giant Food, Inc.,* 26 Md.App. 250, 266, 337 A.2d 445, 454 (1975) ("Whether [the employee] was then bumped inadvertently by [the plaintiff] and immediately assaulted and beat [the plaintiff], as [the plaintiff] said, or whether [the employee] upon being purposely bumped and struck by [the plaintiff], acted in self-defense, as [the employee] indicated, the result is the same. No matter which version is accepted as correct, it cannot be fairly said that [the employee] was advancing [the employer's] interests in doing what he did ...").

7. *See, e.g., Banks v. City of Chicago,* 11 Ill.App.3d 543, 297 N.E.2d 343 (1973) (off-duty police officer was acting within the scope of his duties

conclusion that the officer is always acting in furtherance of the State's business of law enforcement and that all conduct is incidental to police work. Even though a police officer may be said to be "on duty" all of the time, cases regularly hold that a police officer acts outside the scope of his employment where he acts for his own personal reasons and not in furtherance of his employer's law enforcement function. *See, e.g., District of Columbia v. Coron,* 515 A.2d 435, 437–439 (D.C.1986); *Wolf v. Liberis, supra,* 153 Ill.App.3d at 492–493, 106 Ill.Dec. at 414, 505 N.E.2d at 1206; *Dzing v. City of Chicago,* 84 Ill.App.3d 704, 706–707, 40 Ill.Dec. 420, 421, 406 N.E.2d 121, 122 (1980); *Kogos v. Payton,* 522 So.2d 1198, 1200 (La.App.1988); *Snell v. Murray,* 117 N.J.Super. 268, 273–274, 284 A.2d 381, 384–385 (1971), *aff'd,* 121 N.J.Super. 215, 296 A.2d 538 (1972); *Fitzgerald v. McCutcheon,* 270 Pa.Super. 102, 106–107, 410 A.2d 1270, 1272 (1979). *See also, Conroy v. City of Ballwin,* 723 S.W.2d 476 (Mo.App.1986); *Stavitz v. New York,* 98 A.D.2d 529, 471 N.Y.S.2d 272 (1984); *Turk v. McCarthy,* 661 F.Supp. 1526, 1535–1536 (E.D.N.Y.1987).

Moreover, as the opinions of this Court make clear, whether or not tortious conduct occurs during duty hours or the normal period of employment is only one of many considerations in determining whether the conduct is within the scope of employment. Conduct may occur while one is on duty but still be outside of the scope of employment. In fact, in virtually all of the cases in which this Court has held that an assault by an employee was outside the scope of employment, the assault occurred at a time when the employee was "on duty." *E.g. Henley v. Prince George's County, supra,* 305 Md. at 326, 330 n. 2, 503 A.2d at 1336, 1338 n. 2; *LePore v. Gulf Oil Corp., supra,* 237 Md. 591, 207 A.2d 451; *Carroll v. Hillendale Golf Club, supra,* 156 Md. 542, 144 A. 693; *Steinman v. Laundry Co., supra,* 109 Md. 62, 71 A. 517; *Central Railway Co. v. Peacock, supra,* 69 Md. 257, 14 A. 709. *Accord: City of Green Cove*

when, in an attempt to prevent the commission of a crime, he shot a patron of a tavern who pulled a gun); *City of Pittsburgh v. W.C.A.B.,* 108 Pa.Commw. 477, 529 A.2d 1196 (1987) (off-duty police officer was within the scope of his employment when he assisted a fellow officer who was drawn into a scuffle by ruffians).

*Springs v. Donaldson*, 348 F.2d 197, 202 (5th Cir.1965) (involving an on-duty police officer, and the court pointed out that "liability for an assault by an employee that bears no relation to the real or apparent scope of his employment or to the interest of his employer is not imposed upon the employer under the doctrine of respondeat superior"); *Snell v. Murray, supra,* 117 N.J.Super. at 273–274, 284 A.2d at 384–385 (uniformed police officer on duty was not within the scope of his employment when he extorted money from gamblers, shooting one of them in the process); *Desotelle v. Continental Cas. Co.,* 136 Wis.2d 13, 25–30, 400 N.W.2d 524, 528–530 (Wis.App.1986), *review denied,* 136 Wis.2d 563, 407 N.W.2d 560 (1987).

For purposes of the motion to dismiss in the present case, the defendant's alleged conduct prior to the events in New Windsor was outside of the scope of his employment. The facts set forth by the plaintiffs indicate that the defendant was acting from personal motives, that such conduct by a police officer would not be expectable, and that Humphries was in no way furthering the State's interests. This Court's conclusion in *Central Railway Co. v. Peacock, supra,* 69 Md. at 265, 14 A. at 712, regarding an assault upon a passenger by a railway conductor is applicable here: "In doing this he cannot be regarded as acting within the sphere of his duty or scope of his authority. He left and stepped aside from both in order to gratify his spleen...."

As to the events in the town of New Windsor, the matter is less clear. Ordinarily when stopping a motorist or making or attempting to make an arrest, a police officer is acting within the scope of his employment. On the other hand, it is suggested that the events in New Windsor cannot be viewed in isolation and are simply the product of the earlier activity which was outside of the scope of employment.[8] In a case where an alleged unjustified assault and excessive conduct occurred in connection with an

---

8. *See, e.g., Stavitz v. New York,* 98 A.D.2d 529, 532–533, 471 N.Y.S.2d 272, 274–275 (1984); *Lucey v. State,* 73 A.D.2d 998, 424 N.Y.S.2d 38 (1980); *Nisbett v. State,* 31 Misc.2d 32, 39–41, 222 N.Y.S.2d 867, 874–875 (1961). *See also Drug Fair v. Smith,* 263 Md. 341, 349, 283 A.2d 392, 397 (1971); *Balto. & Ohio R. Co. v. Strube,* 111 Md. 119, 127–128, 73 A. 697, 700 (1909).

arrest of a suspected lawbreaker, *Cox v. Prince George's County, supra,* 296 Md. at 170–171, 460 A.2d at 1042–1043, this Court indicated that the scope of employment issue was for the jury and should not have been resolved by sustaining a demurrer. Similarly, under the circumstances of this case, whether or not the defendant's alleged actions in New Windsor were within the scope of his employment should not have been decided on a motion to dismiss.

(2)

█ Alternatively, the complaint sufficiently alleged malice so that Mr. Humphries would not be entitled to immunity under the Maryland Tort Claims Act. The Court of Special Appeals held that plaintiffs made "bald allegations" of malice with no substantiation. We disagree.

The plaintiffs specifically alleged, *inter alia,* that Mr. Humphries, unprovoked and without cause, while in civilian clothes and without identifying himself, "prepared to throw a rock," did throw a rock, and that "the rock did strike the side of plaintiffs' automobile." They further alleged that the defendant "grabbed [Mr. Sawyer] and wrestled him to the ground, grabbed [him] by the hair and began hitting him in the face," and said that "he was going to kill Sawyer." The complaint went on to state that the defendant threatened Mr. Hundley with physical harm, and that he further battered Mr. Sawyer while Mr. Sawyer was in his own automobile. These facts set forth by the plaintiffs directly showed malice. When someone, without provocation or cause, throws rocks at two other persons, he is obviously demonstrating ill will towards those persons. Wrestling another to the ground, pulling his hair, and hitting him on the face, again without cause or provocation, is certainly malicious conduct. When one person states that he is going to kill another, he clearly harbors actual malice toward the victim.

The complaint was more than adequate to allege that Humphries acted maliciously throughout the entire relevant

period. *See Robinson v. Bd. of County Comm'rs,* 262 Md. 342, 348–350, 278 A.2d 71, 74–75 (1971).

(3)

Although it was error to dismiss the complaint, the evidence at trial may show that, as a matter of law, the defendant Humphries was throughout acting in the scope of his employment and without malice. If it does, Mr. Humphries will be entitled to the immunity granted by the Maryland Tort Claims Act. On the other hand, the evidence may show that, as a matter of law, Mr. Humphries was either not acting in the scope of employment or was acting maliciously; in either event, he will not be entitled to immunity under the Tort Claims Act. Finally, the evidence may be such that a jury issue as to immunity, with regard to some or all counts, may be presented.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR CARROLL COUNTY AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR CARROLL COUNTY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. RESPONDENT TO PAY COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS.