1999 ME 155

**STATE of Maine**

v.

**Edwin PARSONS.**

Supreme Judicial Court of Maine.

Argued Oct. 5, 1999.

Decided Oct. 29, 1999.

Michael E. Povich, District Attorney, James Billings, Law Student Intern (orally), Ellsworth, for State.

Walter F. McKee (orally), Lipman & Katz, P.A., Augusta, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

WATHEN, C.J.

[¶ 1] Defendant Edwin Parsons appeals from a judgment entered in the Superior Court (Hancock County, *Atwood, J.*) following a jury verdict convicting him of assault on a police officer in violation of 17–A M.R.S.A. § 752–A, assault in violation of 17–A M.R.S.A. § 207, and criminal operating under the influence of intoxicants in violation of 29–A M.R.S.A. § 2411.[1]  On appeal, Parsons challenges

---

1. Parsons was sentenced to a term of 2 years,   all but 60 days suspended for assault on a

only the first of these convictions and contends that the court erred in denying his motion to acquit on the charge of assaulting a police officer. Parsons argues that the evidence was insufficient to support the conviction. Finding no error, we affirm the judgment.

[¶ 2] The relevant facts may be summarized as follows: On March 27, 1997 in Ellsworth, Parsons was involved in a traffic accident with a State Police Detective, Stephen Pickering. Evidence at trial, taken in the light most favorable to the State, indicated that the accident occurred at about 4:15 p.m. when Parsons's vehicle lightly struck Detective Pickering's unmarked patrol car from behind. Detective Pickering was in civilian clothes and was transporting a friend and her grandson from the Mall to a private residence in violation of State Police policy.

[¶ 3] Detective Pickering activated the blue lights in his patrol car, got out, and walked back to talk with Parsons. When Detective Pickering reached the driver's side window, he detected a strong smell of alcohol and concluded that Parsons was intoxicated. Detective Pickering identified himself as a State Police officer, removed Parsons's keys from the truck, and requested that Parsons produce a driver's license and a registration for the vehicle. Parsons refused to produce the license until after he had seen more formal identification from Detective Pickering.

[¶ 4] After retrieving his identification, Detective Pickering radioed for assistance to investigate both the accident and suspected OUI. Although the detective's shift had ended at 4 p.m., he considered himself to be on duty at the time of the accident because he had not yet left his car for the evening or signed off on his radio. He explained that he requested assistance

from the Ellsworth police because he was concerned that he should not investigate his own accident.

[¶ 5] Detective Pickering returned to Parsons and showed him his State Police identification. Parsons and the detective then walked back to the rear of the police car where they observed minor damage on the rear bumper. Detective Pickering asked Parsons to lean back on the police vehicle and wait for the Ellsworth police to arrive for an investigation of the accident and the possible OUI. Parsons shoved Detective Pickering away. Detective Pickering arrested Parsons for assault and attempted to handcuff him, but Parsons resisted and punched the detective at least three times. A scuffle ensued until two civilians stopped and helped Detective Pickering handcuff and restrain Parsons.

[¶ 6] A jury trial was conducted and following the presentation of the State's evidence, Parsons moved to acquit on the charge of assault on a police officer. See 17-A M.R.S.A. § 752-A (1)(A) (1983).[2] The motion was denied. At the conclusion of all the evidence, the jury returned a verdict of guilty on all counts. Parsons appeals the denial of his motion and alleges there was insufficient evidence to support a finding that at the time of the assault Detective Pickering was acting "in the performance of his official duties" as required by Section 752-A (1)(A). Parsons makes numerous arguments that call into question the precise meaning of that statutory phrase. The crux of Parsons's argument, however, is that this phrase must be construed to mean that a police officer is only performing official duties

---

police officer and was required to pay $247 as restitution for the benefit of Detective Pickering. Parsons was also sentenced to a term of 30 days for simple assault and for a term of 5 days on the OUI conviction.

2. The text of § 752-A(1)(A) reads: "1. A person is guilty of assault on an officer if: A. He intentionally, knowingly or recklessly causes bodily injury to a law enforcement officer while the officer is in the performance of his official duties ...." 17-A M.R.S.A. § 752-A(1)(A) (1983).

when that officer acts during the hours of his assigned shift.[3]

 [¶ 7] Statutory interpretation is a matter of law. *See State v. Huntley*, 676 A.2d 501, 503 (Me.1996). The motion to acquit presents a single legal question, whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Van Sickle*, 434 A.2d 31, 34 (Me.1981). In evaluating whether there is sufficient evidence to convict, we review the evidence as a whole, including any defense witnesses and rebuttal witnesses, to determine if the trial court erred. *See State v. Bridges*, 413 A.2d 937, 940 n. 1 (Me.1980).

[¶ 8] In the present case, there is sufficient evidence to support the conviction. The jury was instructed that it could find Detective Pickering was acting in the performance of his official duties if, based upon an objective analysis of all the facts in evidence, the detective was acting "within the scope of what he was employed to do." The evidence indicated that when the detective was in his State Police vehicle, he was employed to "handle any complaints that [the State Police dispatch] gives [him] or that [he came] across on [his] own." Detective Pickering had reason to believe there was a possible operating under the influence violation and his detention of Parsons pending investigation was a proper means of handling that potential violation. The assault occurred while Parsons was detained; the jury could rationally conclude beyond a reasonable doubt that Parsons had assaulted an officer who was

acting "in the performance of his official duties."

The entry is:

Judgment affirmed.

---

**3.** We note that other states that have considered the meaning of the phrase have rejected a strict construction that equates performing official duties with being on duty. *See, e.g., State v. Gaines*, 332 N.C. 461, 421 S.E.2d 569 (1992); *Sawyer v. Humphries*, 322 Md. 247, 587 A.2d 467, 472–73 (1991) (noting that whether the activities in question "occur[ed] during duty hours ... is only one of many considerations in determining whether the conduct" is in the performance of official duties); *Lodowski v. State*, 302 Md. 691, 490

A.2d 1228 (1985) vacated on other grounds, 475 U.S. 1078, 106 S.Ct. 1452, 89 L.Ed.2d 711 (1986); *Duncan v. State*, 163 Ga.App. 148, 294 S.E.2d 365 (1982); *Tapp v. State*, 406 N.E.2d 296 (Ind.App.1980); *People v. Barrett*, 54 Ill.App.3d 994, 12 Ill.Dec. 624, 370 N.E.2d 247 (1977). Parsons's interpretation of the statute is inconsistent with the legislative purpose behind § 752–A, which was enacted to reduce the incidence of assault on Maine police officers. *See* Legis. Rec. 255 (1978).