# THE PHILADELPHIA, BALTIMORE AND WASH· INGTON RAILROAD COMPANY *vs.* ·MICHAEL STUMPO.

*Appeal—Summons and Severance—Liability of Railroad Com· pany for Assault Made by Its Special Policeman—Officer Not Acting Within Scope of His Employment.*

When one of the two defendants in a joint judgment has not appealed, and the other defendant, who does appeal, applies for a writ of summons and severance, which is returned *non est* as to the other defendant, the better practice is for the appellant to support then his application for a severance by affidavits showing what efforts have been made to find the other defendant, or to have him unite in the appeal. If he can be found outside of the State, the Court may authorize notice of the application for severance to be served on him where found, and if his whereabouts cannot be ascertained, the Court can grant a severance.

The record in this case showed that A. and B., the two defendants against whom a joint judgment was rendered, filed an order for an appeal. Afterwards A. applied for a writ of summons and severance on the theory that he alone had taken the appeal. Two returns of *non est* as to B. were made to the writ. At the argument of the appeal B. did not appear, and no brief was filed by him. *Held,* that no injury can be done to B. by granting a severance, since, if he did enter an appeal he was in default, and if he did not, the time to do so has expired.

When a special police officer employed by a railway company makes an assault upon a person or arrests him on the premises of the company, it is generally a question for the jury whether the officer was at the time acting within the scope of his employment so as to render the company liable for an unjustifiable assault or arrest. But when an assault or arrest is made by an employee not on the premises of the company, and not for an offense of which the company had a right to

complain, the Court will determine as matter of law, that the employee was not acting within the scope of his employment.'

One H. was appointed by the Governor a special policeman for the protection of the property of a railway company and for the preservation of peace on its premises, and he had made arrests of men for stealing rides on freight trains and of persons who were disorderly on the premises of the railway company. The plaintiff, who had been employed by the company, was discharged by a track foreman. A few days afterwards, H. was informed that the plaintiff had made threats against the foreman and was lying in wait to do him harm. Thereupon H. assaulted the plaintiff on a public highway, beat him severely and arrested him on the charge of carrying concealed weapons. Plaintiff had done nothing that would justify his arrest by the company or its agents, and was not on the premises of the company at the time of the arrest. In an action to recover damages therefor, *held,* that under these circumstances it was necessary, in order to recover against the railway company, for the plaintiff to show that the assault and arrest were made by its authority or were within the scope of the employment of H., and since there was no evidence to that effect, the plaintiff was not entitled to recover against the railway company.

*Decided February 24th, 1910.*

Appeal from the Circuit Court for Cecil County (PEARCE, C. J., ADKINS and HOPPER, JJ.).

The cause was argued before BOYD, C. J., BRISCOE, SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*Frederick T. Haines* (with whom was *L. Marshall Haines* on the brief), for the appellant.

*Joshua Clayton* and *Frank B. Evans,* for the appellee.

BOYD, C. J., delivered the opinion of the Court.

A judgment was obtained in the lower Court against the Philadelphia, Baltimore and Washington Railroad Company

and one Hugh G. House in an action for assault and battery.
The case has been conducted in this Court as if the railroad
company was the only appellant, although the docket entry in
the record is: "August 2nd, 1909, *the defendants* filed an
order of appeal, and an affidavit that the appeal was not taken
for delay. And also on the same date, an appeal bond was
approved, filed and recorded." But application was made by
the railroad company for a writ of summons and severance
on the theory that it alone had taken the appeal, and we sup-
pose that was the case—although the order for appeal, the
affidavit and bond are not in the record. An order was passed
requiring House to show cause why that writ should not be
granted, but the sheriff made the return of *non est,* and on
two renewals of that order similar returns were made.

No motion to dismiss the appeal was made by the appel-
lee, and no objection to proceeding with the argument was
suggested. If objection had been made when the case was
called, and we had concluded that it was necessary or proper,
we could have postponed the hearing until further efforts
were made to have the copy of the order served on House,
as apparently the railroad company had done all that could be
required of it before the case was reached in the regular call
of the docket.

We will add that if objection is made in this Court to
entertaining an appeal on the ground that all parties to a
joint-judgment have not united in the appeal, and such an
order as we passed cannot be served, because the party not
appealing cannot be found, the better practice is for the ap-
pellant to *then* support his application for a severance by
affidavits tending to show what efforts had been made to find
the other party, or to have him unite in the appeal. If he
can be found, but is outside of the State, the Court can
authorize notice of the application for severance to be served
on him where found, and if his whereabouts cannot be ascer-
tained, this Court would not hesitate to grant a severance,
after due effort had been made to locate him—at least after
the time allowed for entering an appeal had expired. If any

other practice be adopted, a party who is financially responsible might be deprived of the benefit of an appeal by the collusion, indifference or illwill of the other party against whom the judgment is rendered. As under our statute an appeal from a judgment at law must be entered within two months, it would be useless to delay the case beyond that time in order to have service on the one who did not unite in the appeal, if it be shown that due effort had been made to have him served. In *Motlu* v. *Primrose,* 23 Md. 482, the appeal was taken by five out of six defendants against whom judgment had been rendered. A motion to dismiss was made on account of the non-joinder of the other defendant. Our predecessors held that, upon motion of the five appellants for a writ of summons and severance against the non-joining defendant, the writ should issue out of the appellate Court; the motion to dismiss was overruled and the writ ordered. In *Oldenburg* v. *Dorsey,* 102 Md. 172, we dismissed the appeal, as no application for a writ of summons and severance was made, and being of the opinion that the rulings below were correct, we did not deem it necessary to postpone the case until such application could be made. In this case, House did not appear in person or by attorney in this Court, and no brief was filed for him, and hence he was in default if he did enter an appeal, and, if he did not, the time to do so has long since expired. No injury therefore can be done him by granting a severance, and as the time for taking an appeal has expired the appellee cannot be subjected to the annoyance of a second appeal. We will therefore pass on the merits of the case, as if a formal order of severance had already been entered of record—deeming the judgment we will enter sufficient, under the circumstances.

The facts which we regard as material and relevant are as follows: House was appointed by the Governor, to use the language of his commission, "a policeman for the protection of the property of the Northern Central Railway Company, the Philadelphia, Baltimore and Washington Railroad Company, and the Union Railroad Company of Baltimore, and

for the preservation of peace and good order on the premises of the said company in this State," etc.   The plaintiff lived some distance from Perryville, and had worked for the appellant company until about the middle of March, 1908, when he was put off by the track foreman, Edward Harmon, because the number of track hands was being reduced.   On the morning of the 26th of that month he started out with a gun, as he said, to kill some birds.   He went into Perryville to show a friend a book he had received.   When he left his friend's house he started up the street where he met House. He testified that House stopped him and said he wanted to see him—that he wanted him to come along with him; that House asked him to let him see his gun, which he handed to him and House gave it to another man and grabbed him by the coat, saying: "You will come; you must come."

The plaintiff said he took the gun from the man who had it and started up the street; that he looked back and saw a mob of about forty men following him, of which House was the leader.   The crowd followed him and some shots were fired at him.   He ran up the road towards Port Deposit, and finally entered the house of a Mr. Keesey, which was about seventy-five yards from the railroad, where he left his gun and a pistol.   He then went out of the house, and his testimony and that of some of his witnesses tend to show that he was outrageously treated—having been struck on the back of the head by House with a billy, and otherwise injured and abused.   He was taken to Perryville station and from there to jail at Elkton.   The only charge preferred against him was for carrying concealed weapons, and he was convicted, fined and discharged upon payment of the fine.

House's version of the occurrence on the street in Perryville was that when he met the appellee he asked him to go with him to the station to talk with Ed. Harmon, he asked for his gun which he got and handed to another man who was standing by, and then felt his clothes to see if he had a pistol on him; that he discovered that he had, and *then* told him he was under arrest; that appellee grabbed the gun

576        P., B. & W. R. CO. vs. STUMPO.

Opinion of the Court.        [112

and ran, and as they followed him he was acting as if he was about to shoot at them; that when he saw him aim his gun at one of the men he told the man to shoot him; that they followed him to Keesey's and when he came out of the house, he (House) thought he was about to draw his pistol and then he struck him with a billy.

Shortly before House met the plaintiff on the street, he had been told by Harmon that the plaintiff had threatened his life, and that it was said he was at the toolhouse on the railroad between Perryville and Port Deposit, "lying there in wait to kill Ed. Harmon, they supposed." It is stated in the brief for the appellee that when House heard that, "he immediately started out to look Stumpo up" and met him on the street, but the record does not sustain that statement. He was asked this question: "That was before you started out to arrest him?" To which he replied: "Yes, sir; I didn't start out to arrest him," and instead of going to the toolhouse he went up the street where he met the plaintiff. It may not be easy to understand, but House, when called as a witness for the plaintiff, testified positively that he did not know at the time that Harmon was one of the railroad company's men, and there is no other testimony in the record on the subject.

Assuming, as we must, the plaintiff's theory of the arrest on the street to be correct, the important question in the case is raised by the defendant's first prayer, which asked that the jury be instructed that there was no legally sufficient evidence to entitle the plaintiff to recover against the railroad company. That was offered on the theory that there was no evidence legally sufficient to show that House was at the time of the arrest acting for the company, and within the scope of his employment. He was certainly not engaged at the time in protecting the company's property. Nor was he acting " for the preservation of peace and good order *on the premises* of the said company," unless it can be fairly said that because Harmon discharged the plaintiff, and had heard that the plaintiff had threatened him and was lying in wait

at the toolhouse to kill him there was evidence from which a jury could infer that House was acting, and had, under his employment, the right to act for the company in arresting the appellee. The arrest was on a public street of Perryville, and not on the premises of the company, and there is not a particle of evidence which tends to show that the plaintiff had done anything up to the time that House met him which would have justified the company, or any one acting for it, to put him under arrest, for it can scarcely be claimed that the appellee, who had been in the employ of the company and was simply dropped or put off because the company was reducing the number of track hands, was liable to arrest for going on the railroad. If he had threatened Harmon, and Harmon was afraid of him, he could have sworn out a peace warrant against him, but unless the facts that Harmon was in the employ of the company, had discharged the plaintiff who afterwards threatened his life, and that House was a policeman appointed as above stated are sufficient to permit a jury to say the company was liable for the arrest, there is nothing in the record which can justify the submission of the case against it to the jury. The evidence offered by the plaintiff to show that it was within the scope of his employment seems to us to point to the contrary.

One witness said that House's services for the appellant were "protecting the company's property and interests and making arrests of riders on freights and such like." When asked whether he arrested persons on passenger trains, that witness said: "No, not passengers, unless they were disorderly and misbehaved themselves, then I believe he would make an arrest of the kind," and "around the station at Perryville."

Another said he had seen him arrest trainriders and one or two for being drunk and disorderly around the station. House said he had arrested people for being drunk and disorderly and for illegal train riding. He swore positively that he had never arrested anyone for trespassing on the rail-

road property, except illegal trainriders, and there is no evi-
dence tending to show that he had ever arrested anyone for
the company, who was not at the time on its premises. In the
absence of proof of some authority, it certainly cannot be
said that Harmon, a track foreman, could make the company
liable by authorizing House to arrest the plaintiff, or anyone
else, for threatening him. If a policeman, appointed under
our statute, at the instance of a corporation, does make an ar-
rest on the premises of the corporation, or in protecting its
property, it may well be required to assume the burden of
showing that it was not within the scope of his employment,
but when he arrests one who had done nothing of which the
company can complain—the arrest being on a public street
of a town, and not on the premises of the company—the
plaintiff must show that such an act was done by the author-
ity of the company, express or implied, and was within the
scope of his employment. If the railroad company is liable
because House arrested the plaintiff under the circumstances
of this case, then it would be liable if any employee com-
plained to a policeman similarly appointed of threats by
some one against him, and there was a rumor that the one
who made the threats was lying in wait for the one threat-
ened. The statute, in addition to what we have said, also
authorizes such policeman to exercise in the counties and
cities in which the railroads, etc., are situated "all the author-
ity and powers held and exercised by constables at common
law and under the statutes of this State, and also all the
authority and powers conferred by law on policemen in the
city of Baltimore," but it is manifest that it is not intended
to make the corporation applying for the appointment liable
for everything such polceman may do, regardless of whether
it be for the protection of its property or the preservation of
peace and good order on its premises.

In *Tolchester Beach Improvement Company* v. *Steinmeier*,
72 Md. 313, it was distinctly said that a company was not
liable for the acts of a policeman appointed under this statute
simply because he was appointed by the Governor at its nom-

ination, or because it paid the salary of the policeman. In speaking of the policeman in that case, the Court said: "Primarily Fletcher was a State officer," and again: "He was responsible to the State for the proper discharge of his duty, and not to the company. He was not answerable to the company, but to the State, and could be indicted for malfeasance as any other State officer. His duty was the same as any other policeman or constable." It was also said: "It was for the privilege of commanding, at all times when needed, an officer with constabulary power for the protection of their property, and preserving the peace on their boats and premises, where in their peculiar business a need for such person, clothed with such authority, so often arose, that the law required such corporations to pay his salary." Emphasis is also laid on the fact that what was complained of in that case was not done on the premises of the company, or for the preservation of its property. It was said: "In addition to all these reasons why Fletcher's act cannot be regarded as the act of the appellant, it is to be noted especially that, so far as the appellant is concerned, his duty to it, so far as the exercise of. his peace-power was concerned, is, by the language of the statute and his commission, restricted to *the premises* of the company. Whatever was done was not done on the premises of the company." The Court was careful to say that "it is not necessary for us to hold that Fletcher was in no sense an officer of the company, and that, if called on to enforce regulations and by-laws of the company, and he did so purely because of his relation to the company, the company could not be answerable for what was wrongfully done in pursuance of that authority, but within the scope of his employment." Since that case we have often held that a corporation may be liable for the acts of such a policeman, when acting as an employee of the company, and within the scope of his employment. *Deck* v. *B. & O. R. R. Co.,* 100 Md. 168; *B. & O. R. R. Co.* v. *Deck,* 102 Md. 669; *B. C. & A. Ry. Co.* v. *Ennalls,* 108 Md. 75, and other cases.

Nor can it be denied that it is generally for the jury to determine whether or not the person guilty of an alleged assault was at the time the employee of the company and acting within the scope of his employment. In *Con. R'y. Co.* v. *Pierce,* 89 Md. 503, that rule was recognized, and after citing *Cleveland* v. *Newson,* 45 Mich. 62, where it was held that the burden was on the defendant to show that the servant was not engaged in the course of his employment, and *Rounds* v. *Del., Lac. & West. R. R. Co.,* 64 N. Y. 129, where it was said it was ordinarily a question to be determined by the jury, we added: "But, as was said in *Ritchie* v. *Waller, supra,* (63 Conn. 155, S, C. 27 L. R. A. 161), when the servant's deviation from the strict course of his employment or duty is slight and not unusual, the Court may determine, as a matter of law, that he still executing the master's business, and if the deviation is very marked and unusual it may determine the contrary. If, as in the *Peacock Case, supra* (69 Md. 257), the driver deliberately abandons his car and makes an assault on one not a passenger, on the sidewalk, the Court must determine the question, because the act is too clearly out of the course of the servant's employment to hold the master responsible." In *Deck's Case,* 100 Md. 168, while the general rule is fully recognized, the Court went into the question as to whether there was legally sufficient evidence to justify the submission of, the case to the jury. It was held that there was, as we also determined in the second appeal between those parties. The .same may be said of the case of *B. & O. R. R. Co.* v. *Strube,* 111 Md. 119. In those cases it must be noticed that the alleged assaults occurred *on the premises* of the company, where the policemen were authorized to act, and there was ample evidence to show that the officers were acting for their employer and within the scope of their employment.

But in this case, there is not only no evidence of violation of the law by the appellee on the company's premises, of which it or anyone acting for it could complain, but the arrest was not on its premises, and the only charge made against

the appellee was for carrying concealed weapons. The Court below instructed the jury that the railroad company was not liable if the arrest was made for carrying a concealed deadly weapon, and not for trespassing on the railroad company's property.

As we have seen above, House testified that he had not started out to arrest the plaintiff, and that he did not know that Harmon was one of the railroad men, and, although it may be said he was an adverse witness, he was a witness for the plaintiff when those statements were made and there is no evidence to the contrary. Unless it is necessary to submit every case to the jury in which it is shown that the act complained of was done by a policeman, appointed under this statute, it is difficult to see why this case, as presented by the record, must be so submitted. In *Cleveland* v. *Newsom,* 45 Mich. 62, referred to in *Con. R'y. Co.* v. *Pierce, supra,* the boy causing the injury was not only in the employ of the defendant, but was doing something for the defendant which was clearly within the scope of his employment, unless he had turned aside from that employment for his own purposes, the burden of proving which was properly held by JUDGE COOLEY to be on the defendant. But in this case House was primarily a State officer, acting at the time off the premises of the appellant, not protecting its property, and under such circumstances as might well raise the presumption that he was acting in the capacity of a State officer and not as an employee of the company. It was necessary, therefore, for the plaintiff to offer evidence legally sufficient to show that he was acting within the scope of his employment, which we do not think the plaintiff has done.

We have not thought it necessary to discuss what occurred after the plaintiff left the street in Perryville, for unless House was acting within the scope of his employment when he arrested the appellee on the street, it cannot be claimed that he was subsequently. House's conduct in shooting at or directing another to shoot at the appellee when he was trying to escape, or what was done after he was caught, at Mr.

Keesey's, cannot be justified or excused, but that does not authorize the appellant to be mulcted in damages in the absence of legally sufficient proof that he was acting for it, within the scope of his employment.

So without discussing other exceptions, we must hold that the defendant's first prayer should have been granted. As there is nothing to justify a judgment against the company, the judgment against it must be reversed without a new trial.

> *Judgment against the Philadelphia, Baltimore and Washington Railroad Company reversed, without awarding a new trial, the appellee to pay the costs in this Court, including the transcript and printing of the record, and one-half of those in the lower Court—the judgment against House not being before us for review.*