CHARLES T. CARROLL *v.* HILLENDALE GOLF
CLUB, INCORPORATED.
[No. 106, October Term, 1928.]

*Decided February 14th, 1929.*

Appeal from the Baltimore City Court (STUMP, J.).

The cause was argued before PATTISON, URNER, ADKINS,.
OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*J. Cookman Boyd,* with whom were *Wm. Purnell Hall*
and *J. Britain Winter* on the brief, for the appellant.

*R. Contee Rose* and *Wendell D. Allen,* for the appellee..

SLOAN, J., delivered the opinion of the Court.

On July 17th, 1927, Robert Ward was a greenskeeper in the employ of the Hillendale Golf Club, Incorporated, the appellee, which had a golf course near Towson in Baltimore County. At the same time the appellant Charles F. Carroll, who sues by his father and next friend, Walter L. Carroll, was a caddy at the golf course. On the day mentioned the appellant and a companion named Herbert Gallagher were in the woods just off the sixth tee, hunting for lost golf balls, when, without any apparent reason and to their surprise, they were called to by Ward, who had a shotgun in his hands, and on account of his threatening attitude the boys ran. When they had gotten off the club property, on Taylor Avenue, Ward fired a shot, neither of the boys being hit. They then ran into the woods, where they remained about a half hour, when they came out on the road, saw Ward, and "started to run back into the woods," when Ward shot at them again, this time hitting both boys, the appellant getting one shot in the right arm.

The appellant testified that he and his companion were off the club property when both shots were fired, Ward, when he fired the second time, standing by his car on Taylor Avenue. Ward, who was the only one who testified as to the nature of his employment, said his duties were "to see that the greens are kept up, fertilized, watered and so forth," and that included the care of fairways and tees. He said his duties at the club did not require him to carry a gun, but that he did need it on the farm adjoining the club property. It appears that he lived on a farm adjacent to the club but in no way connected with it, and that he carried the gun because he "had three hundred dollars worth of hogs killed on the farm three weeks before the accident." He does not attempt to give any explanation of the shooting of the boys because of any connection they had with the loss of his hogs. His excuse for shooting was, "by the action of the boys I did take the gun and shoot over them to scare them off." He said he had shot the gun for the purpose of helping to clear the boys away from the course. There is

no evidence that his duties at the club required him to carry a gun; in fact he said they did not, and the only reason given was the fact that his hogs had been killed. He did not get near enough to the boys to recognize them, though the appellant had been a caddy at the club for more than a year. Ward was convicted of an assault on the boys in the Circuit Court for Baltimore County.

At the conclusion of the plaintiff's case, the defendant offered a prayer for a directed verdict and, the same having been granted, verdict and judgment were entered accordingly; and from the judgment for the appellee this appeal was taken, an exception having been reserved by the appellant to the granting of the prayer. It is this action of the court which makes necessary a review of the evidence.

The question in all such cases as this is whether the agent or employee was at the time of the wrong complained of acting within the scope of his employment or agency. The rule, as laid down by this court in *Cate v. Shaum,* 51 Md. 299, 308, is "that the master is responsible for the wrongful acts of his servant, even though they be wilful or reckless, if the act done by the servant be within the scope of his employment and in furtherance of his master's business." See *Evans v. Davidson,* 53 Md. 245, 249; *Barabasz v. Kabat,* 86 Md. 23, 33; *Holler v. Ross,* 68 N. J. L. 324, 59 L. R. A. 943; *Evers v. Krouse,* 70 N. J. L. 653, 66 L. R. A. 592.

The appellant, in support of his contention that the assault made by Ward in this case was within the scope of his employment as greenskeeper for the appellee, and should have been submitted to the jury, relies upon the decisions of this court in *Consolidated Ry. Co. v. Pierce,* 89 Md. 495, 503; *Deck v. Balto. & O. R. Co.,* 100 Md. 168, 182; *Balto. & O. R. Co. v. Strube,* 111 Md. 119, 127; *Evans v. Davidson,* 53 Md. 245; *Wilson Amusement Co. v. Spangler,* 143 Md. 98, 104; *Jones v. Sherwood Distilling Co.,* 150 Md. 24, 38; *Goldman Stores v. Bugg,* 156 Md. 36; in all of which it is in effect stated that the questions of agency and scope of employment are generally questions for the jury. There are cases, however, in this state and elsewhere, in which, under

the evidence, the courts have held it to be a matter of law. It cannot be assumed that, merely because an employee commits a tort while in the employ of his master, the act complained of was within the scope of the servant's employment. The burden is on the plaintiff to prove the fact. *Tolchester Imp. Co. v. Steinmeier,* 72 Md. 313, 316; *Phila., W. & B. R. Co. v. Stumpo,* 112 Md. 571, 578; *Obertoni v. Boston & M. R. R.,* 186 Mass. 481, 67 L. R. A. 422; *Holler v. Ross, supra.*

While usually, in cases of this sort, the circumstances are such as to make it debatable as to whether the servant's acts were committed in the course of his employment, it is not always so, and the court may be called upon to decide as a matter of law whether there is any legally sufficient evidence of the fact relied on to sustain a recovery. The test as laid down by this court in *Consolidated Ry. Co. v. Pierce,* 89 Md. 495, 504, adopting the rule stated in *Ritchie v. Waller,* 63 Conn. 155, 27 L. R. A. 161, was, "When the servant's deviation from the strict course of his employment or duty is slight and not unusual, the court may determine as a matter of law that he is still executing the master's business, and if the deviation is very marked and unusual it may determine the contrary." "Where only one legal inference may be drawn from the facts the court should decide it, but where differing legal inferences may reasonably be drawn it is a question for the jury." *Mechem on Agency* (2nd Ed.), sec. 1982; 18 *R. C. L.* 795.

The question presented to us is, Was there legally sufficient evidence that the greenskeeper, Ward, when he pursued and shot the appellant, was acting within the scope of his employment and was he then engaged in the furtherance of his master's business; or did he step aside from and abandon that business in the pursuit of his own wilful and wanton impulse? There is no proof in the record that his occupation at the golf club required him to carry a shotgun, or that his employer knew of it, or that policing the golf course was among his duties, or that chasing caddies, who had as good a right on the grounds as he, was expected or required of

him; nor is there any evidence that the caddies were under his control or supervision.

It is in the record that his excuse for having a gun was the loss of the hogs which he had on an adjoining farm; that his farm had no connection with the club, and whatever there was on or connected with the farm was his and not the club's business. "Where there is not merely deviation, but a total departure from the course of the master's business, so that the servant may be said to be on a 'frolic of his own,' the master is no longer answerable for the servant's conduct." *Pollock on Torts,* 76; *Joel v. Morison,* 6 Car. & P. 501, 172 Eng. Reprint, 1838; *Tolchester Beach Imp. Co. v. Steinmeier,* 72 Md. 313, 316; *Phila. W. & B. R. Co. v. Stumpo,* 112 Md. 571, 578; *Central Ry. Co. v. Peacock.* 69 Md. 257, 262. There is no evidence in this case that as greenskeeper Ward had charge of the appellee's property, or had any authority to drive trespassers or others from the property, and, even if he had been "put in charge of the property" that fact "would not justify him in shooting any one who interferes with it and the master will not be liable where the servant shoots simply to give vent to his own personal malice or resentment; and certainly not in any case in which the shooting had no connection with or relation to the act which the servant was authorized to perform." *Mechem on Agency* (2nd Ed.), sec. 1979, and cases there cited.

The cases in which the employer has been held liable have generally been those of police officers, watchmen, and railroad trainmen. In such cases the torts of the servant are usually so related to his employment or occupation as to leave to the jury the determination of the fact of the relation of the servant's torts to the scope of his employment and to the furtherance of the master's business. In the instant case, in our opinion the record fails to show anything except the exhibition of the personal malice, wantonness, and bad temper of the servant, and that, inexcusable as it was, it bore no relation to the scope of his employment or to the appellee's business, and the appellee's prayer was, therefore, properly granted.

The record shows that in the course of the trial the appellant reserved five exceptions to rulings of the trial court on questions of evidence. In the brief and at the argument the only question discussed was the exception to the granting of the appellee's demurrer prayer. The record is headed, "Plaintiff's Bill of Exceptions," singular, not plural, and none of them are numbered. By Acts 1927, ch. 224, amending Code, 1924, art. 5, sec. 12, it is provided that "the bill or bills of exceptions shall be headed at the beginning Plaintiff's (or Defendant's as the case may be) Bill (or Bills) of Exceptions and beneath that, if there should be more than one exception, should appear the subheading "Exception 1," etc. As the appellant has presented but one exception, that to the ruling on the appellee's prayer, we assume that this constituted his "Bill of Exceptions," though we find no reversible error in any of the rulings on the evidence.

*Judgment affirmed, with costs to the appellee.*