Lloyd E. **JORDAN**

v.

**WESTERN DISTRIBUTING COMPANY, et al.**

**No. CIV. CCB–03–950.**

United States District Court, D. Maryland.

Oct. 1, 2003.

Terry H Gilbert, Friedman and Gilbert, Cleveland, OH, David Bradley Malik, Chesterland, OH, Jay Dante Miller, Miller Murtha and Psoras LLC, Lutherville, MD, for plaintiff.

Andrew Gendron, Gabrielle S. Moses, Venable Baetjer and Howard, LLP, Baltimore, MD, for defendant.

## MEMORANDUM

BLAKE, District Judge.

This case arises out of an incident on Interstate 95 ("I–95") during which defendants Ronnie G. Sasser, Jr. and Stephen Philip Meininger, who at the time were employees of defendant Western Distributing Company ("Western"), allegedly attempted to cut off plaintiff Lloyd E. Jordan's vehicle and force it off the road. In Jordan's amended complaint, he alleges that Sasser and Meininger are liable for negligence, assault, and intentional infliction of emotional distress, and that Western is liable for negligence under the doctrine of respondeat superior and for the negligent hiring, training, supervision, and retention of Sasser and Meininger. Now pending before the court is Western's motion to dismiss Counts VII and VIII of the amended complaint. This matter has been fully briefed and no hearing is necessary. *See* Local Rule 105.6.[1] For the reasons

---

**1.** With its reply memorandum, Western filed a request for a hearing. Following that re-

that follow, the court will grant the motion as to Count VII and deny it as to Count VIII.

### I.

U.S. Armored Company ("USAC") is a subsidiary of Western and engages in the transportation of United States currency for the Federal Reserve Bank. (Am. Compl.¶¶ 1, 2.) On February 26, 2002, Sasser and Meininger were employed as drivers and security guards for Western and USAC. (*Id.* ¶¶ 3, 4.) At approximately 10:30 a.m. on February 26, 2002, Sasser was driving a ten-wheel Kenworth tractor trailer belonging to Western containing approximately $ 9.9 million. (*Id.* ¶¶ 5, 10.) Meininger was a passenger in the same truck. (*Id.* ¶ 6.)[2]

As Jordan was driving his vehicle on I–95, Sasser and Meininger, with the Western truck, suddenly "attempted to cut off and to force [Jordan's] vehicle off the road on numerous occasions, placing [Jordan] in imminent fear of serious bodily injury and harm." (*Id.* ¶ 11.) During the incident, Meininger, who was under the influence of marijuana, leaned out of the passenger window and repeatedly aimed a sawed-off shotgun at Jordan. (*Id.*) Meininger also threatened to "blow off" Jordan's head. (*Id.*)

Shortly after the incident began, the Western truck was stopped by Maryland State Police officers. (*Id.* ¶ 12.) Sasser and Meininger were arrested and eventually charged with the following criminal violations: Sasser was charged with (1) possession of marijuana; and (2) carrying a concealed weapon without the proper permit; and Meininger was charged with (1) first degree assault of Jordan; (2) second degree assault of Jordan; (3) concealment of a deadly weapon; (4) possession of controlled, dangerous substance ("CDS"); and (5) possession of paraphernalia. (*Id.* ¶ 13.) Sasser pleaded guilty to possession of marijuana in the District Court for Baltimore City and the weapons charge was dismissed. (*Id.* ¶ 14.) After a two-day criminal trial in the Baltimore County Circuit Court on October 2 and 3, 2002, a jury found Meininger guilty of first degree assault against Jordan and possession of CDS. (*Id.* ¶ 15.) On October 21, 2002, Meininger was sentenced to three years suspended sentence, three years unsupervised probation, and fined $1000. (*Id.* ¶ 16.)

This suit was originally filed in Circuit Court for Baltimore County. On April 1, 2003, Western removed the action to this court pursuant to 28 U.S.C. §§ 1332 and 1441. Following a change in Jordan's counsel, Jordan filed an amended complaint. In his amended complaint, Jordan alleges eight counts against the defendants: negligence (Count I), assault (Count II), and intentional infliction of emotional distress (Count III) against Sasser; negligence (Count IV), assault (Count V), and intentional infliction of emotional distress (Count VI) against Meininger; and negligence pursuant to the doctrine of respondeat superior (Count VII) and negli-

quest, Jordan filed a "Response" to Western's request for a hearing. Western subsequently filed a motion to strike Jordan's response, in which it argues that the response is, in fact, a surreply. Because Jordan's 2–page "Response" raises no new arguments, the motion to strike will be denied.

**2.** The only obvious label on the truck was the word "Western," which was displayed on the side of the vehicle. (Am.Compl.¶ 8.) The truck did not bear any indication that it was being used to transport United States currency. (*Id.* ¶ 7.) In fact, according to Jordan, Western deliberately intended to make the truck appear like an ordinary truck used to transport goods or equipment, as opposed to currency. (*Id.* ¶ 9.)

gent hiring, training, supervision, and retention (Count VIII) against Western.

## II.

The Fourth Circuit has summarized the principles governing the resolution of Rule 12(b)(6) motions:

> The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; "importantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir.1992). Accordingly, a Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief. *See id.* . . . We do note, however, that for purposes of Rule 12(b)(6), we are not required to accept as true the legal conclusions set forth in a plaintiff's complaint. *See District 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.,* 609 F.2d 1083,1085 (4th Cir.1979).

*Edwards v. City of Goldsboro,* 178 F.3d 231, 243–44 (4th Cir.1999).[3]

## III.

### A.

■ Western first seeks to dismiss Jordan's respondeat superior claim. " 'Under the doctrine of respondeat superior, an employer is jointly and severally liable for the torts committed by an employee acting within the scope of his employment.' " *Baltimore Police Dep't v. Cherkes,* 140 Md. App. 282, 780 A.2d 410, 439 (2001) (quoting *S. Mgmt. Corp. v. Taha,* 137 Md.App. 697,

769 A.2d 962, 974–75 (2001)); *see also Tall v. Bd. of Sch. Comm'rs of Baltimore City,* 120 Md.App. 236, 706 A.2d 659, 667 (1998). " 'An employee's tortious conduct is considered within the scope of employment when the conduct is in furtherance of the business of the employer and is authorized by the employer.' " *Cherkes,* 780 A.2d at 439 (quoting *Tall,* 706 A.2d at 667).

■ Various factors are considered in determining whether conduct was within the scope of employment. In *Sawyer v. Humphries,* the Court of Appeals of Maryland explained:

> "To be within the scope of the employment the conduct must be of the kind the [employee] is employed to perform and must occur during a period not unreasonably disconnected from the authorized period of employment in a locality not unreasonably distant from the authorized area, and actuated at least in part by a purpose to serve the [employer]."

322 Md. 247, 587 A.2d 467, 471 (1991) (quoting *E. Coast Freight Lines v. Mayor and City Council of Baltimore,* 190 Md. 256, 58 A.2d 290, 304 (1948)). "In addition, an important factor is whether the employee's conduct was 'expectable' or 'foreseeable.' " *Id.*

Particularly when an employee has committed an intentional tort, Maryland courts have emphasized that "where an employee's actions are personal, or where they represent a departure from the purpose of furthering the employer's business, or where the employee is acting to protect his own interests, even if during normal duty hours and at an authorized locality, the employee's actions are outside the scope of his employment." *Id.* Finally, "where the

---

**3.** In addressing Western's motion to dismiss Count VIII, the Rule 12(b)(6) standard will be discussed in further detail.

conduct of the [employee] is unprovoked, highly unusual, and quite outrageous, courts tend to hold that this in itself is sufficient to indicate that the motive was a purely personal one and the conduct outside the scope of employment." *Id.* at 471–72 (internal quotation marks omitted).

In arguing that Sasser and Meininger acted within the scope of their employment on February 26, 2002, the parties focus on the factors discussed in *Sawyer.* Jordan argues that: (1) Sasser and Meininger's conduct was of the kind they were hired to perform because they were in the act of transporting currency for Western when the alleged incidents involving Jordan took place; (2) the alleged conduct took place during an authorized period of employment; (3) the conduct took place at an authorized location; and (4) Sasser and Meininger acted with the purpose of serving Western. (*See* Pl.'s Resp. to Def.'s Mot. to Dismiss at 5–6.)

Even assuming Jordan is correct as to the second and third elements, his argument fails because the conduct of Sasser and Meininger, as alleged by Jordan, was not "of the kind" they were employed to perform and was not actuated at least in part to serve Western. Jordan does not allege that Sasser and Meininger attempted to run him off the road and threatened to "blow off" his head in order to protect the currency in the truck. Nor does Jordan allege that Sasser and Meininger were authorized to run cars off the road or threaten individuals with weapons without provocation. In fact, Jordan's allegations make clear that Sasser, who was in possession of marijuana, and Meininger, who was acting under the influence of marijuana, acted suddenly, recklessly, without warning, and without provocation. (*See* Am. Compl. ¶¶ 11, 12.) In other words, under Jordan's allegations, Sasser's and Meininger's behavior was "unprovoked, highly unusual, and quite outrageous." *See Sawyer,* 587 A.2d at 471.

In *Carroll v. Hillendale Golf Club,* 156 Md. 542, 144 A. 693 (1929), the Court of Appeals of Maryland held that a greenskeeper at a golf club acted outside the scope of his employment when he shot at two boys several times, hitting one in the right arm. *Id.* at 695. Specifically, the Court stated:

> Where there is not merely deviation, but a total departure from the course of the master's business, so that the servant may be said to be on a frolic of his own, the master is no longer answerable for the servant's conduct. There is no evidence in this case that as greenskeeper Ward had charge of the [employer's] property, or had any authority to drive trespassers or others from the property, and, even if he had been put in charge of the property, that fact would not justify him in shooting any one who interferes with it and the master will not be liable where the servant shoots simply to give vent to his own personal malice or resentment; and certainly not in any case in which the shooting had no connection with or relation to the act which the servant was authorized to perform.

*Id.* (internal quotation marks and citations omitted).

Jordan attempts to distinguish *Carroll* by arguing that, unlike the greenskeeper in *Carroll,* Sasser and Meininger carried a gun and drove a truck as part of their duties for Western. This argument, however, is unpersuasive. While Sasser and Meininger may have been authorized to carry a weapon,[4] there is no allegation that Sasser and Meininger were authorized to

---

**4.** It is unclear whether the weapon used against Jordan was the same weapon that resulted in charges of carrying a concealed weapon without the proper permit against Sasser and concealment of a deadly weapon against Meininger.

use that weapon recklessly and without any justification. Thus, like the employee in *Carroll,* the alleged conduct of Sasser and Meininger was a "total departure from the course of [Western's] business." *Id.* Moreover, the alleged conduct was both unexpected and unforeseeable. The mere fact that Sasser and Meininger were in the process of transporting currency when they completely departed from that duty does not alter that conclusion. Accordingly, Jordan's respondeat superior claim fails and Count VII of the amended complaint will be dismissed.

### B.

■ In his negligent hiring, training, supervision, and retention claim, Jordan alleges:

> The Defendant knew or should have known that Sasser and Meininger were potentially dangerous and would not properly perform the duties assigned to them. A reasonable and prudent employer would not have ignored such indications of Sasser's and Meininger's unfitness for such duties. The Defendant knew or should have known that Sasser and Meininger were likely to confront and be in contact with members of the public, such as the Plaintiff, and therefore the Defendant owed such a duty to the Plaintiff and said duty was breached.

(Am.Compl. ¶ 39.) Essentially, Western argues that Jordan only alleges legal conclusions and fails to make any specific factual allegations upon which Western could be found liable. (Def.'s Mem. at 8–9; Def.'s Reply at 8–10.) According to Western, Jordan should not be allowed to engage in a "fishing expedition" for facts to supports his claim. (Def.'s Reply at 10.) In opposing the motion, Jordan acknowledges that the allegations in Count VIII are vague. Jordan, however, argues that

the necessary details of the claim are within Western's control and that he must, therefore, be allowed to obtain discovery relating to his claim.

■ Fed.R.Civ.P. 12(b)(6) must be viewed in conjunction with and balanced against Fed.R.Civ.P. 8(a)(2). On the one hand, "[a] Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Migdal v. Rowe Price–Fleming Int'l, Inc.,* 248 F.3d 321, 325 (4th Cir.2001) (citing *Edwards,* 178 F.3d at 244). On the other hand, under Rule 8(a)(2), a complaint need only set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2); *see also Migdal,* 248 F.3d at 325–26; *Barbee v. Coble,* 208 F.R.D. 549, 551 (M.D.N.C.2002) ("The purpose of a complaint is to provide fair notice of the claim to the defendant.").

The allegations in Count VIII place Western on notice of the claim against it and, therefore, comply with Rule 8(a)(2). Further, Jordan alleges that Western knew or should have known that Sasser and Meininger were potentially dangerous.[5] Whether Jordan can establish that fact, and the other facts necessary to establish negligent retention, may be addressed at a later stage, after an opportunity for at least limited discovery. Because it is not "certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief," the motion to dismiss Count VIII of the amended complaint will be denied.

A separate order follows.

---

5. It is plausible, for example, that Western knew or should have known that Sasser and Meininger were likely to drive the Western truck under the influence of marijuana.

## ORDER

For the reasons stated in the accompanying Memorandum, it is hereby **ORDERED** that:

1. Western's motion to strike (docket no. 44) is **Denied;**

2. Western's motion to dismiss Counts VII and VIII of the amended complaint (docket no. 26) is **Granted as to Count VII and Denied as to Count VIII;**

3. Western's motion to dismiss (docket no. 2) is **Denied** as moot;

4. Western's motion to strike the amended complaint (docket no. 17) is Denied as moot; and

5. The Clerk shall send copies of this Order and the accompanying Memorandum to counsel of record.