**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 04-1965**

———————

LLOYD E. JORDAN,

Plaintiff - Appellant,

versus

WESTERN DISTRIBUTING COMPANY,

Defendant - Appellee,

and

STEPHEN PHILIP MEININGER; RONNIE GENE SASSER,
JR.,

Defendants.

———————

Appeal from the United States District Court for the District of
Maryland, at Baltimore. Catherine C. Blake, District Judge. (CA-
03-950-CCB)

———————

Argued: March 17, 2005          Decided: May 2, 2005

———————

Before MICHAEL and DUNCAN, Circuit Judges, and Frederick P. STAMP,
Jr., United States District Judge for the Northern District of West
Virginia, sitting by designation.

———————

Affirmed by unpublished per curiam opinion.

———————

**ARGUED:** Terry H. Gilbert, FRIEDMAN & GILBERT, Cleveland, Ohio, for Appellant.  Andrew Gendron, VENABLE, L.L.P., Baltimore, Maryland, for Appellee.  **ON BRIEF:** Gabrielle S. Moses, VENABLE, L.L.P., Baltimore, Maryland; Luis A. Toro, SENN, VISCIANO, KIRSCHENBAUM, MERRICK, P.C., Denver, Colorado, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

This case arises from an incident that occurred on February 26, 2002, on Interstate 95 in Baltimore, Maryland. On that date, Ronnie G. Sasser, Jr. ("Sasser") and Stephen Philip Meininger ("Meininger"), while transporting currency in an armored vehicle pursuant to their duties as drivers and security guards for Western Distributing Company ("Western") and its subsidiary, United States Armored Company, allegedly attempted to "cut off and to force [Lloyd Jordan's] vehicle off the road on numerous occasions." Compl. ¶ 11. During the incident, Meininger also allegedly leaned out of the passenger window and repeatedly aimed a sawed-off shotgun at Jordan and threatened to "blow off" Jordan's head. Id.

The Maryland State Police subsequently stopped and arrested Sasser and Meininger. Sasser was charged with possession of marijuana and carrying a concealed weapon without a proper permit. Meininger was charged with first degree assault of Jordan, second degree assault of Jordan, concealment of a deadly weapon, possession of a controlled, dangerous substance, and possession of paraphernalia. Sasser pleaded guilty to the marijuana charge and the State dismissed the weapon charge against him. A jury convicted Meininger of first degree assault against Jordan and possession of a controlled, dangerous substance.

Jordan filed this civil suit against Sasser, Meininger, and Western in the Circuit Court for Baltimore County, Maryland. The

3

complaint alleges eight counts, including negligence, assault, and intentional infliction of emotional distress against Sasser and Meininger (Counts I through VI), negligence pursuant to the doctrine of respondeat superior against Western (Count VII), and negligent hiring, training, supervision, and retention against Western (Count VIII). Western then removed the case to federal court pursuant to 28 U.S.C. §§ 1332 and 1441. The district court entered an order granting Western's motion to dismiss Count VII (respondeat superior) and denying Western's motion to dismiss Count VIII (negligent hiring, training, supervision, and retention). Subsequently, the district court entered an order denying Jordan's motion for summary judgment on Count VIII and granting Western's cross-motion for summary judgment on Count VIII.[*] These decisions are the basis of Jordan's appeal.

## I. Respondeat Superior

The district court found that Jordan's respondeat superior claim against Western was without merit because the alleged conduct of Sasser and Meininger was not connected to their duties of employment. The court found that the actions of Sasser and Meininger were a departure from Western's course of business and were "both unexpected and unforeseeable." J.A. 86.

---

[*]The district court later granted Jordan's motion for default judgment as to Sasser and Meininger. The court entered a joint and several judgment of $200,000 against them for compensatory damages and assessed each defendant $100,000 in punitive damages.

4

Jordan argues that the district court erred in dismissing this claim because respondeat superior liability is an issue that should be decided by a jury. He asserts that Western can be held liable for any acts incident to the performance of the duties entrusted to its employees, even if they are against Western's orders. He contends that Sasser and Meininger committed the actions at issue using Western's vehicle and the firearms provided to them by Western to carry out their duties. In addition, he notes that the attack occurred while Sasser and Meininger were transporting currency for Western in furtherance of its business. Jordan asserts that "[t]he corporation clearly benefitted from the guarding and transport of U.S. currency by Sasser and Meininger and it was while furthering the transport of the currency that Sasser and Meininger attacked [him]." Appellant's Br. at 16.

Western responds that the wrongful actions taken by Sasser and Meininger -- specifically, in trying to force Jordan off the road, pointing a weapon at him, and threatening to shoot him -- were not of the kind that they were hired to perform. Further, Western points out that Sasser and Meininger were subsequently arrested and separated from the truck as well as the currency that Western entrusted to their care. Western asserts that these circumstances refute the claim that Western benefitted from Sasser and Meininger's conduct. Western argues that Jordan is essentially claiming that Western is liable simply because Sasser and Meininger

5

were on duty at the time of the incident, and that, under this theory, an employer would be liable for the actions of its employees regardless of how outlandish the behavior is. Western asserts that the district court correctly applied the analysis outlined in Sawyer v. Humphries, 322 Md. 247, 255, 587 A.2d 467, 471 (1991), and properly concluded that Sasser and Meininger acted outside of the scope of their duties.

In reviewing a dismissal of claims pursuant to Rule 12(b)(6), this Court takes the factual allegations of the complaint as true and reviews any legal issues de novo. Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 764 (4th Cir.), cert denied, 540 U.S. 940 (2003). Under Maryland law, "the questions of agency and scope of employment are generally questions for the jury." Carroll v. Hillendale Golf Club, 156 Md. 542, 545, 144 A. 693, 695-95 (1929). However, "'[w]hen the servant's deviation from the strict course of his employment or duty is slight and not unusual, the court may determine as a matter of law that he is still executing the master's business, and if the deviation is very marked and unusual it may determine the contrary.'" Id. at 546, 144 A. at 695 (quoting Mechem on Agency § 1982 (2d ed.)).

Maryland law states:

> To be within the scope of the employment the conduct must be of the kind the servant is employed to perform and must occur during a period not unreasonably disconnected from the authorized period of employment in a locality not unreasonably distant from the authorized area, and actuated at least in part by a purpose to serve the master.

East Coast Freight Lines, Inc. v. Baltimore, 190 Md. 256, 285, 58

A.2d 290, 304 (1948) (citations omitted) (quoted in Sawyer v. Humphries, 322 Md. 247, 255, 587 A.2d 467, 471 (1991)). In Sawyer, the court further noted that the conduct must be "expectable" or "foreseeable." 322 Md. at 256, 587 A.2d at 471. The Sawyer court also found that,

> particularly in cases involving intentional torts committed by an employee, this Court has emphasized that where an employee's actions are personal, or where they represent a departure from the purpose of furthering the employer's business, or where the employee is acting to protect his own interests, even if during normal duty hours and at an authorized locality, the employee's actions are outside the scope of his employment.

Id. at 256-57, 587 A.2d at 471. Finally, the court noted that "'[w]here the conduct of the servant is unprovoked, highly unusual, and quite outrageous,'" this can in and of itself be sufficient to indicate that the conduct was personally motivated and outside of the scope of employment. Id. at 257, 587 A.2d at 471-72 (quoting Prosser and Keaton On The Law of Torts § 70, at 506 (5th ed. 1984)).

We find that the district court properly dismissed Jordan's respondeat superior claim. We cannot consider the actions of Sasser and Meininger to be "of the kind" they were employed to perform. Sasser and Meininger were not acting to protect the cargo entrusted to them during this incident –– rather, personal animus motivated their actions. While it is true that Sasser and Meininger committed these acts while on duty, using the truck and guns provided to them by Western, they were in no way attempting to

7

advance Western's interests. Their actions actually placed the safety of the cargo entrusted to them in peril, rather than protecting it. Moreover, it goes almost without saying that their actions were "unprovoked, highly unusual, and quite outrageous." Thus, the district court's decision to dismiss Count VII was proper.

II. Negligent Hiring, Training, Supervision and Retention

Certain additional facts are relevant in determining whether the district court properly granted summary judgment to Western on Count VIII (negligent hiring, training, supervision and retention). Pursuant to United States Department of Transportation regulations, Western conducts pre-employment drug screenings of new drivers. If an employee tests positive, Western terminates his employment. Sasser's pre-employment drug screening was negative. However, Meininger's screening was positive and Western initially terminated him on November 24, 2000. Meininger then exercised his right under the United States Department of Transportation regulations to see a substance abuse professional, and privately engaged the services of JoJan P. Adams ("Adams"). Adams filed a report with Western stating that Meininger did not need drug treatment and should be returned to full-time employment as soon as possible. Western then required Meininger to undergo another drug screening, which he passed. Western re-hired Meininger as a driver on January 4, 2001

8

without requiring him to submit another application and without conducting any further background checks.

In his complaint, Jordan claims that Western violated several provisions of the Federal Motor Carrier Safety Regulations ("FMCSR") in securing and maintaining Sasser and Meininger's employment, and was consequently negligent in hiring and retaining Sasser and Meininger. Jordan alleges the following violations: (1) failing to contact Sasser and Meininger's previous employers to inquire about past substance abuse; (2) allowing Meininger, a "known substance abuser," to operate a commercial motor vehicle, and failing to inform the Bureau of Engraving and Printing of Meininger's positive drug test in 2000; (3) failing to conduct a proper pre-employment/return to duty drug test prior to re-hiring Meininger in January 2001; (4) accepting the findings of Meininger's substance abuse counselor, whose testing did not comply with federal regulations; and (5) failing to conduct proper follow-up drug tests during the twelve months after Meininger was re-hired.

For the purpose of resolving the summary judgment motions, the district court assumed, without deciding, that Western breached its duty of care to the general public by not following all of the federal regulations with respect to performing background checks on Sasser and Meininger, hiring Meininger, and requiring Meininger to submit to follow-up drug tests. The district court also assumed

9

that Jordan suffered actual damages. Nevertheless, the district court found that Jordan's claim of negligent hiring and retention lacked merit because he failed to show that Western's negligence was the proximate cause of his injuries. Specifically, the court found Jordan's evidence deficient in two respects: (1) he failed to present sufficient proof that Meininger was actually impaired by marijuana at the time of the incident; and (2) he presented no facts from Sasser or Meininger's past that made it foreseeable to Western that they would become violent or assaultive.

The district court first concluded that, in order to prove that Western was negligent in (1) hiring Meininger despite his past drug use, and (2) failing to conduct follow-up tests to prove he was drug free, Jordan must prove that Meininger was in fact under the influence of drugs at the time of the incident and that his impairment caused Jordan's injuries. In evaluating the evidence, the district court found that Jordan relied on the fact that Meininger tested positive for drugs seven days after the incident and that a jury found him guilty of possessing a controlled, dangerous substance at the time of the incident. The district court explained that these circumstances did not logically require a finding that he was actually impaired at the time the incident occurred. Thus, the district court concluded that no genuine issue of fact remained with respect to this claim.

10

Next, the district court found that Jordan failed to demonstrate that Sasser and Meininger's actions were foreseeable to Western. The district court noted that the record reflects no evidence that Sasser or Meininger had ever previously threatened or committed violence against anyone, either physically or with a weapon, prior to the incident with Jordan. The district court also determined that there was no evidence that Sasser or Meininger had previously threatened to or actually used a vehicle to harm anyone. The district court noted that Jordan relied on Meininger's pre-employment drug screen as the factor that should have put Western on notice of Meininger's dangerousness. However, the court found that a reasonable person would not assume that someone under the influence of marijuana is likely to become violent.

Based on these findings, the district court concluded that no genuine issue of material fact existed with respect to Jordan's claim of negligent hiring and retention against Western. Accordingly, the district court denied Jordan's motion for summary judgment and granted Western's motion for summary judgment as to this claim.

Jordan argues that the district court erred in granting Western's motion for summary judgment because Jordan submitted sufficient evidence for his claim to be submitted to a jury. Jordan claims that the evidence shows that Sasser and Meininger were under the influence of marijuana at the time of the incident.

11

He argues that a police report notes that the cab of the truck that Sasser and Meininger were driving smelled of burnt marijuana, and that several grams of marijuana were found in their possession. He also asserts that they tested positive for marijuana after the incident. Further, he argues that the harm that Jordan suffered was foreseeable because the general type of harm he received -- injury at the hands of carriers under the influence of drugs -- was attributable to Western's negligence in hiring Meininger after his positive drug test and to Western not following up as required by federal regulations.

Jordan further argues that the intentional nature of Meininger's actions did not make the harm unforeseeable. He claims that the test is not based on intention, but on the general type of harm. He argues: "Harm caused by drivers and armed guards under the influence of drugs is a general field of danger. Whether the actual damage is caused intentionally or unintentionally, the potential for serious harm existed and was known to Western." Appellant's Br. at 27.

In addition, Jordan asserts that the district court's finding that no evidence exists to suggest that marijuana can prompt violence is "simply ludicrous." Appellant's Br. at 27. He claims that it is well established that marijuana impairs judgment, and that a jury should decide whether the use of marijuana by Sasser and Meininger caused them to be reckless and violent or influenced their decision to assault Jordan.

12

Finally, Jordan contends that proximate cause exists because the incident with Sasser and Meininger never would have occurred if Western had properly complied with the applicable regulations regarding drug testing. He asserts that such testing would have revealed that Meininger was still abusing drugs and he would have been terminated. In addition, he claims that if Western had properly maintained files and shared its background check information with other federal agencies, Sasser and Meininger's "inherently unfit nature would have become apparent." Appellant's Br. at 29.

Western counters that Jordan has again presented no solid evidence that either Sasser or Meininger was under the influence of drugs at the time of the incident. Western points out that Jordan did not verify by deposition, or by statement under oath in any form, the allegations in his amended complaint, nor did he provide any affidavits of fact witnesses. Further, Western points out that the police report cited by Jordan in which the officer noted the smell of burnt marijuana in the cab of the truck is not included as part of the record in the Joint Appendix. Western asserts that the district court correctly concluded that Jordan cannot prove proximate cause because he has no evidence to support his allegation that Sasser and Meininger were under the influence of marijuana at the time of the incident.

13

Further, Western argues that Jordan improperly attempts to enlarge the scope of foreseeability. Western asserts that "[u]nder Plaintiff's theory, had Messrs. Meininger and Sasser committed theft, arson, insider trading, defamation, fraud, or any other intentional act, all would be in the 'general field of danger' and foreseeable to Western based on a pre-employment drug screen that was positive for marijuana." Appellee's Br. at 26. Western contends that the district court properly found that Jordan's harm was not foreseeable because it was not the type of harm that a reasonable person would believe a driver's drug use would cause. In addition, Western notes that Jordan has failed to cite any case in which a court found a link between marijuana use and assault.

Finally, Western reiterates that Jordan produced no evidence to show that Western breached its duty of care. Western asserts that Jordan has provided no proof that Western did not comply with federal regulations. Further, Western asserts that, even if Jordan had produced evidence of violations, these could not support a claim for negligent hiring, training, supervision, or retention based on the holding in Bryant v. Better Business Bureau of Greater Maryland, Inc., 923 F. Supp. 720 (D. Md. 1996). The Bryant court held that a state court could not impose liability on an employer for failing to prevent a harm that is not cognizable under the common law. Id. at 751. Moreover, Western asserts that Jordan could not proceed with a negligence claim based on violations of

14

federal regulations because such a claim would be preempted by federal law.

We review a district court's ruling on a summary judgment motion de novo. Karpel v. Inova Health Sys. Servs., 134 F.3d 1222, 1226 (4th Cir. 1998). A court should grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding whether a genuine issue of material fact remains, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986).

Under Maryland law,

> [i]n order to prove a cause of action for either negligent hiring, supervision or retention, the Plaintiff must establish that her injury was caused by the tortious conduct of [an employee], that the employer knew or should have known by the exercise of diligence and reasonable care that the [employee] was capable of inflicting harm of some type, that the employer failed to use proper care in selecting, supervising or retaining that employee, and that the employer's breach of its duty was the proximate cause of the Plaintiff's injuries.

Bryant v. Better Business Bureau of Greater Maryland, Inc., 923 F. Supp. 720, 751 (D. Md. 1996). In a negligent selection claim, "there is a rebuttable presumption that an employer uses due care in hiring an employee." Evans v. Morsell, 284 Md. 160, 165, 395 A.2d 480, 483 (1978). In cases involving the intentional torts of

15

employees, the critical standard is "whether the employer knew or should have known that the individual was potentially dangerous." Id., 395 A.2d at 483.

In this case, Jordan has established that Sasser and Meininger were Western employees and that they were responsible for his injuries. He next must prove that Western "had or should have had knowledge of [Sasser and Meininger's] conduct or general character which would have caused a prudent employer in these circumstances to have taken action." Bryant, 923 F. Supp. at 752.

A similar analysis applies when considering whether Western's actions were the proximate cause of Jordan's injuries. Proximate cause exists when, at the time of the tortfeasor's negligent act, the tortfeasor "should have foreseen 'the general field of danger,' not necessarily the specific kind of harm to which the injured party would be subjected as a result of the defendant's negligence." Yonce v. Smithkline Beecham Clinical Labs, Inc., 111 Md. App. 124, 139, 680 A.2d 569, 576 (1996) (quoting Stone v. Chicago Title Ins. Co., 330 Md. 329, 337, 624 A.2d 496, 500 (1993)). The chain of causation remains unbroken if an intervening occurrence "is one which might, in the natural and ordinary course of things, be anticipated as not entirely improbable, and the [initial tortfeasor's] negligence is an essential link in the chain . . ." Yonce, 111 Md. App. at 139, 680 A.2d at 577 (quoting State ex rel. Schiller v. Hecht Co., 165 Md. 415, 421, 169 A. 311, 313

16

(1933)).  Thus, the key issue in determining Western's liability is whether Sasser and Meininger's illegal conduct was foreseeable to Western.

> To establish foreseeability, the plaintiff must present facts showing that a person of ordinary intelligence, who is equipped with the knowledge of the dangerous condition, should realize the danger posed by that condition.  The test for foreseeability "encompasses what a person of ordinary prudence should realize, not what he or she actually did know or realize."  Stated differently, a particular harm is foreseeable if a person of ordinary prudence should realize that the condition of which he or she has notice[] enhances the likelihood that the harm will occur.

Hemmings v. Pellam Wood Ltd. Liab. Ltd. P'ship, 375 Md. 522, 541, 826 A.2d 443, 454 (2003) (quoting Brown v. Dermer, 357 Md. 344, 362, 744 A.2d 47, 57 (2000)).

This Court cannot conclude that Western should have foreseen Sasser and Meininger's violent conduct solely because of the positive results of Meininger's pre-employment drug screening.  No evidence exists in the record that Meininger previously had been convicted of any crime related to drug use.  Moreover, there is no evidence that Meininger tested positive for drugs while employed by Western before this incident occurred.  We also note that neither Sasser nor Meininger had a documented history of violent behavior.  In addition, no record exists of any coworkers or customers filing a complaint regarding their behavior prior to this incident.  Thus, we cannot conclude that a reasonable person would have anticipated such actions by Meininger based on the information known to Western.

17

We also agree with the district court that proximate cause is lacking due to Jordan's failure to conclusively demonstrate that Sasser and Meininger were under the influence of drugs at the time of the incident. In order to successfully prove a nexus between Western's alleged negligence -- i.e., hiring Meininger after a positive drug screening and failing to conduct follow-up testing -- and Jordan's injuries, Jordan would have to show that Meininger acted while under the influence of drugs. We agree with the district court that the evidence in the record -- (1) the fact that Meininger tested positive for drugs seven days after the incident, and (2) the fact that a jury found Meininger guilty of possessing a controlled substance at the time of the incident -- is insufficient to prove that he was actually under the influence of drugs during the incident.

In briefs and during oral argument, Jordan's counsel alluded to a police report that states that the cab of the truck smelled of burnt marijuana at the time of Sasser and Meininger's arrest. However, the parties did not include this police report in the Joint Appendix, and we cannot assume that it exists for the purpose of this decision. Thus, we have not considered that evidence in our analysis.

Given the above conclusions, we find that no genuine issue of material fact exists as to Jordan's negligent hiring and supervision claim, and that the district court appropriately granted summary judgment in favor of Western.

18

### III.  Conclusion

For the reasons set forth above, the orders of the district court dismissing Count VII of the complaint and granting summary judgment to Western Distributing Company on Count VIII of the complaint are

AFFIRMED.